[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 20, 2001
THOMAS K. KAHN
CLERK

_____

No. 98-7033

_____

D.C. Docket No. 97-00251-CR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BARRY LEON ARDLEY

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(November 20, 2001)**

ON PETITION FOR REHEARING EN BANC

(Opinion February 20, 2001)

Before ANDERSON, Chief Judge, TJOFLAT, EDMONDSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS and WILSON, Circuit Judges.

O R D E R:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Suggestion of Rehearing En Banc is DENIED.

/s/ R. LANIER ANDERSON
CHIEF JUDGE

2

CARNES, Circuit Judge, Concurring in the Denial of Rehearing En Banc, in which BLACK, HULL and MARCUS, Circuit Judges, join:

Our dissenting colleague has written much expressing his disagreement with the panel opinion in this case and his disappointment about the refusal of the en banc court to vacate the panel decision. We resist the temptation to write as much and respond only briefly.

## I.

As the dissent concedes, the rule requiring that issues be raised in opening briefs is well-established. See United States v. Ardley, 242 F.3d 989, 990 (11th Cir. 2001) (collecting cases). That rule serves valuable purposes, as do all of the procedural default rules, which is why we regularly apply them. See generally Presnell v. Kemp, 835 F.2d 1567, 1573-74 (11th Cir. 1988). The principal concern of the dissent seems to be that applying this specific procedural default rule in this particular context somehow conflicts with the doctrine that Supreme Court decisions are to be retroactively applied to cases on direct appeal. But that concern conflates the two doctrines. They are separate and each plays a different role, answering a different question.

Retroactivity doctrine answers the question of which cases a new decision applies to, assuming that the issue involving that new decision has been timely raised and preserved. Procedural bar doctrine answers the question of whether an

3

issue was timely raised and preserved, and if not, whether it should be decided anyway. It makes no more sense to say that a procedural bar should not be applied in this situation because doing so undermines or frustrates retroactive application of a Supreme Court decision, than it does to say that procedural bars should not be applied in any situation because doing so undermines or frustrates the constitutional doctrines and commands underlying the issue that is held to be defaulted. We routinely hold that constitutional issues based upon Supreme Court decisions applicable to trials occurring after those decisions are issued are nonetheless procedurally barred if they were not raised in a timely and appropriate fashion. No one has suggested, so far as we know, that procedural bars should not be enforced in that context because doing so undermines or frustrates the doctrine that Supreme Court decisions should be applied to all trials occurring after the decisions are issued.

If the dissent's position were adopted, no procedural bar could ever be enforced because doing so would undermine or frustrate whatever values or doctrines underlie the constitutional or statutory provisions being belatedly asserted. Why should we give more protection against procedural default to the principles underlying the general doctrine established by retroactivity decisions than we do to the doctrines established by any other decisions of the Supreme

Court, or than we do to the Fourth, Fifth, or Sixth Amendments, or any other constitutional provisions? We do not think we should.

As a final point on the retroactivity matter, we note that the dissent's position is more than a little inconsistent. It recognizes that Apprendi issues not timely raised at trial should be reviewed only for plain error, which is another way of saying that trial level procedural defaults should be enforced in the usual way notwithstanding the retroactive applicability of the Apprendi decision to all cases pending at the time it was announced. Plain error review is much more narrow than the review that is conducted when there has been no procedural default. See United States v. Humphrey, 164 F.3d 585, 588 (11th Cir. 1999)("our power to review for plain error is 'limited' and 'circumscribed.'"); United States v. Pielago, 135 F.3d 703, 708 (11th Cir. 1998) ("The plain error rule places a daunting obstacle before [the appellant]."); United States v. King, 73 F.3d 1564, 1572 (11th Cir. 1996) ("[t]he plain error test is 'difficult to meet'").

One of the best indications of the narrowness of plain error review is the fact that this Court has not yet found any Apprendi error to fit within the scope of the plain error doctrine. Many appellants have tried to squeeze their Apprendi claims through, but we have rejected all their efforts. Even when there has been Apprendi error and it has been "plain," we have still held the other requirements of the plain

5

error rule were not met.  See, e.g., United States v. Cromartie, __ F.3d __, No. 00-13957 (11th Cir. Oct. 3, 2001); United States v. Gallego, 247 F.3d 1191 (11th Cir. 2001); United States v. Wims, 245 F.3d 1269 (11th Cir. 2001); United States v. Candelario, 240 F.3d 1300 (11th Cir. 2001); United States v. Smith, 240 F.3d 927 (11th Cir. 2001); United States v. Pease, 240 F.3d 938 (11th Cir. 2001); United States v. Swatzie, 228 F.3d 1278 (11th Cir. 2000).

The dissent never explains why enforcing  trial level procedural rules by cutting appellate review down to the narrow confines of the plain error rule  does not undermine or frustrate the purposes of the retroactivity doctrine,  but enforcing appellate level procedural rules does.   If the retroactivity doctrine requires that we address issues that have been procedurally defaulted on appeal, why does it not require that we address full bore those issues that have been procedurally defaulted at trial instead of limiting our review to plain error?  Everything the dissent says about declining to review  Apprendi issues that were not properly raised in an appellant's brief  applies with equal force to refusing to review for anything other than plain error Apprendi issues that were not  properly raised at trial. The retroactivity doctrine either trumps the procedural default doctrine or it does not. Our position, which is consistent, is that it does not.

## II.

The dissent also suggests, in footnote 20, that our enforcement of procedural bars in this context will require district courts to hold evidentiary hearings in order to decide if an attorney's failure to raise Apprendi issues before that decision was released constitutes ineffective assistance of counsel. That is simply not so. In this circuit, we have a wall of binding precedent which shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel. See, e.g., Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that '[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.'") (citations to three other Eleventh Circuit decisions omitted); Davis v. Singletary, 119 F.3d 1471, 1476 (11th Cir. 1997) ("it was not professionally deficient for [counsel] to fail to anticipate that the law in Florida would be changed in the future to bar the admission of hypnotically induced testimony.") Pitts v. Cook, 923 F.3d 1568, 1572-74 (11th Cir. 1991); Thompson v. Wainwright, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986) ("defendants are not entitled to an attorney capable of foreseeing the future development of constitutional law"). That rule applies even if the claim based upon anticipated changes in the law was reasonably available at the time

counsel failed to raise it. See, e.g., Pitts, 923 F.3d at 1572-74 (holding that even though a claim based upon the 1986 Batson decision was "reasonably available" to counsel at the time of the 1985 trial, failure to anticipate the Batson decision and raise that claim was not ineffective assistance of counsel).

Further, the rule that it is not ineffective assistance for an attorney to fail to foresee a change in the law applies even when the change is such that the forfeited issue was, in hindsight, a sure fire winner. Wright v. Hopper, 169 F.3d 695, 707-08 (11th Cir. 1999) (Batson issue); Elledge v. Dugger, 823 F.2d 1439, 1443 (11th Cir. 1987) (Michigan v. Mosley issue); Thompson, 787 F.2d at 1459 n.8 (Ake issue). Because our circuit law completely forecloses the contention that an attorney's failure to anticipate the Apprendi decision is ineffective assistance, district courts are not required to, and should not, hold an evidentiary hearing on that issue. There is no relevant evidence to hear. The issue is settled as a matter of law.

Not only that, but we have recently held that neither the novelty of the Apprendi decision nor the perceived futility of raising the issue before the Supreme Court released that decision can serve as adequate cause to excuse a defendant's failure to have raised the issue in a timely fashion. See McCoy v. United States, 266 F.3d 1245 (11th Cir. 2001). The McCoy decision also holds

8

that <u>Appendi</u> is not retroactively applicable to cases that were (unlike this one) through the direct appeal process at the time <u>Apprendi</u> was released. We think that our post-<u>Apprendi</u> decisions provide sufficient guidance to the district courts that they will not, as the dissent fears, "result in a waste of judicial resources."

### III.

The final point to which we wish to respond is the dissent's assertion that the panel's application of a procedural bar in this context is somehow disobedient to the Supreme Court's remand instructions.

Whenever the Supreme Court decides an important issue of law, it routinely takes every case in which the court of appeals decision came out before the new decision was announced and in which the certiorari petitioner claims that new decision might apply, and treats all of those cases the same. The uniform treatment given all such cases is to vacate the court of appeals judgment and remand the case for further consideration in light of the new decision. Those boilerplate orders come out in bushel baskets full. There is no implication in the standard language of those orders that the court of appeals is to do anything except reconsider the case now that there is a new Supreme Court decision that may, or may not, affect the result. We have never felt constrained to read anything into such routine

9

remands other than the direction that we take another look at the case because of the new decision. See United States v. Miller, 492 F.2d 37, 40 (5th Cir.1974) (noting when Supreme Court vacates and remands case for reconsideration in light of one of its opinions, that action does not imply any particular result because "had [a particular result] been the [Supreme] Court's desire, certiorari could have been granted and this case summarily reversed on the authority of [the opinion in light of which this Court was to reconsider the case], rather than being remanded for further consideration").

For example, in Jones v. American Broad. Cos., Inc., 961 F.2d 1546 (11th Cir. 1992), this Court had affirmed a district court's judgment against the plaintiff in a defamation action. The Supreme Court vacated our decision and remanded the case for further consideration in light of an intervening decision of the Supreme Court restricting the "opinion" defense in defamation actions. On remand, this Court did not interpret that remand order – which used technical language identical to that of the order in this case – as a suggestion from the Supreme Court that its intervening decision meant the result in the appeal should change. Instead, on remand, this Court held that the intervening decision of the Supreme Court made no difference at all and said it saw no reason to change the prior affirmance of the district court's judgment. Id. That is the same thing the panel in this case

10

did.

The kind of mass production, assembly-line remand order that was issued in this case implies nothing about what a court of appeals should do on remand, except that it is to reconsider the case in light of the intervening decision of the Supreme Court that is named in the remand order. The panel in this case did that. It reconsidered its decision affirming Ardley's conviction and sentence in light of Apprendi. The reconsideration the panel afforded the case in light of Apprendi included whether the appellant had procedurally defaulted the Apprendi issue by not raising it in his briefs before this Court. He had.

Inherent in the dissent's position is speculation that the Supreme Court meant to preclude the panel in this case from considering on remand whether the Apprendi issue was procedurally barred. There is nothing at all to support that speculation. There is no reason to believe that the Supreme Court decided to rule out the application of well-established procedural rules to Apprendi issues in this or any other case, and for some reason simply forgot to tell anyone. We give the Supreme Court more credit than that.

Perhaps the best indication that the panel's action on remand in this case was not disobedient to the Supreme Court's instructions is the fact that the Supreme Court promptly denied the certiorari petition that was filed seeking review of the

11

panel's action on remand. See Ardley v. United States, 121 S.Ct. 2621(2001).
And the Supreme Court did the same thing in the other Apprendi issue case from another panel which had done the same thing on remand that the panel in this case did, Garcia v. United States, 251 F.3d 160 (11th Cir.), cert. denied, 122 S.Ct. 60 (2001). Apparently, that Court interprets its remand order the same way we do.

## IV.

We have not attempted to set out everything in the dissenting opinion with which we disagree, but instead have confined our discussion to a few of the major points. To go further would require more of the reader's attention than this enterprise justifies. The panel simply applied a long- and well-established procedural rule to an appeal when the case was remanded to it by the Supreme Court. We think the panel got it right and that this Court as a whole was correct to deny en banc rehearing. It is no wonder why the Supreme Court so promptly denied certiorari when this case reached it after the remand decision was entered by the panel.

TJOFLAT, Circuit Judge, Dissenting from the Denial of Rehearing En Banc, in which BARKETT, Circuit Judge, joins:

The panel's opinion on remand from the Supreme Court, 242 F.3d 989 (11th Cir. Feb. 20, 2001), is reprinted in full infra Appendix. The panel's initial opinion in this case issued on November 19, 1999. United States v. Ardley, 202 F.3d 287 (11th Cir. 1999) (unpublished table decision). Subsequently, the Supreme Court decided Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The defendant's conviction and sentence were not yet final when Apprendi was decided, and the defendant was therefore entitled to retroactive application of that decision. The Supreme Court granted the defendant's petition for a writ of certiorari, vacated the panel's earlier decision, and remanded the case for reconsideration in light of Apprendi. Ardley v. United States, 531 U.S. 1063, 121 S. Ct. 751, 148 L. Ed. 2d 654 (2001). On remand, the panel refused to apply Apprendi to the merits of the defendant's claim because the defendant had failed to raise an Apprendi-type claim in his initial brief on appeal.

I believe that the panel should have reached the merits of the defendant's claim that his sentence was imposed in violation of Apprendi. Under the doctrine of retroactivity, the defendant should receive the benefit of the rule announced in Apprendi because his case was on direct appeal when the Supreme Court decided Apprendi. The panel's decision in this case, however, deprives the defendant of

14

such benefit by invoking the procedural rule regarding abandonment. The panel thus limits the reach of retroactivity by giving retroactive application to an intervening Supreme Court decision only if a litigant placed an argument mirroring the Supreme Court's decision in his initial brief on appeal, even if such argument ran counter to circuit precedent at the time the litigant submitted his brief.

Because I do not subscribe to such a limitation on retroactivity, which will have sweeping effects far beyond Apprendi cases, and because the panel's opinion has created a circuit split on retroactive application of intervening Supreme Court decisions (with the Eleventh Circuit standing alone), I dissent from the court's refusal to rehear this case en banc.

## I.

The principle of Ardley is that this circuit will apply the law of an intervening Supreme Court decision only if the litigant briefed the issue addressed by that intervening decision in the litigant's first brief to us. This principle holds true even if a case is on remand from the Supreme Court for reconsideration in light of that intervening decision, and even if it is readily apparent to all that the intervening decision could affect the resolution of the case. I believe Ardley's principle sets a dangerous precedent because it runs afoul of the long-standing

15

"general rule of retrospective effect for the constitutional decisions of [the Supreme] Court." Robinson v. Neil, 409 U.S. 505, 507, 93 S. Ct. 876, 877, 35 L. Ed. 2d 29 (1973). The panel's decision will alter the way that this court treats all cases – criminal and civil, on appeal and on remand from the Supreme Court – and will even alter the way the lower courts will treat decisions of this court.

## A.

Justice Oliver Wendell Holmes once estimated that "[j]udicial decisions have had retrospective operation for near a thousand years." Kuhn v. Fairmont Coal Co., 215 U.S. 349, 372, 30 S. Ct. 140, 148, 54 L. Ed. 228 (1910) (Holmes, J., dissenting). Although the Supreme Court briefly retreated from this historical position in Linkletter v. Walker, 381 U.S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965), and its progeny, and Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971), and its progeny, the Court has firmly returned to the historical view. A litigant whose case is on direct review is entitled to the benefit of a change in the law through retroactive application of the intervening decision. Harper v. Va. Dep't. of Taxation, 509 U.S. 86, 113 S. Ct. 2510, 125 L. Ed. 2d 74 (1993) (announcing and applying the rule of retroactivity to civil cases on direct

appeal);[1] <u>Griffith v. Kentucky</u>, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987) (announcing and applying the rule of full retroactivity to criminal cases on direct appeal); <u>cf.</u> <u>Teague v. Lane</u>, 489 U.S. 288, 305-10, 109 S. Ct. 1060, 1073-75, 103 L. Ed. 2d 334 (1989) (discussing the retroactivity of decisions to defendants attacking convictions in collateral proceedings).

In <u>Harper</u>, the Court spoke succinctly about retroactive application of an intervening decision:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

<u>Harper</u>, 509 U.S. at 97, 113 S. Ct. at 2517.  <u>See also</u> <u>James B. Beam Distilling Co. v. Georgia</u>, 501 U.S. 529, 544, 111 S. Ct. 2439, 2448, 115 L. Ed. 2d 481 (1991) (opinion of Souter, J.); <u>Jones v. United States</u>, 224 F.3d 1251, 1258 (11th Cir. 2000) (citing <u>Harper</u> and <u>Griffith</u> in applying an intervening Supreme Court decision to a case on direct appeal at the time of the intervening decision); <u>McKinney v. Pate</u>, 20 F.3d 1550, 1566 (11th Cir. 1994) (en banc) ("<u>Beam</u> and <u>Harper</u> stand . . . for the proposition that, once a rule of federal law is applied to the

---

[1] I realize that there are some nuances to this rule in the civil context.  I have written about this in <u>McKinney v. Pate</u>, 20 F.3d 1550, 1565-66 (11th Cir. 1994) (en banc).

parties in the case in which it was announced, it must be applied retroactively.").

The rule of retroactive application of new constitutional rules is most clear in criminal cases. See, e.g., Griffith, 479 U.S. at 328, 107 S. Ct. at 716 ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."); Shea v. Louisiana, 470 U.S. 51, 105 S. Ct. 1065, 84 L. Ed. 2d 38 (1985); United States v. Johnson, 457 U.S. 537, 102 S. Ct. 2579, 73 L. Ed. 2d 202 (1982). Following the reasoning of Justice Harlan in Desist v. United States, 394 U.S. 244, 256, 89 S. Ct. 1030, 1037, 22 L. Ed. 2d 248 (1969) (Harlan, J., dissenting), and Mackey v. United States, 401 U.S. 667, 675, 91 S. Ct. 1160, 1164, 28 L. Ed. 2d 404 (1971) (Harlan, J., concurring in the judgment), the Court has stated that retroactive application of an intervening decision is part of the "basic norms of constitutional adjudication," and has relied upon two main reasons[2] for applying retroactivity to litigants on

---

[2] Because Griffith characterized Justice Harlan's concerns as two-fold rather than three-fold, see Griffith, 479 U.S. at 323, 107 S. Ct. at 713, I will follow that characterization. I am aware that the Court in United States v. Johnson, 457 U.S. 537, 546-48, 102 S. Ct. 2579, 2585-86, 73 L. Ed. 2d 202 (1982), stated that Justice Harlan argued on three grounds rather than two. Johnson addressed Justice Harlan's additional concern that "the Court's 'ambulatory retroactivity doctrine,' [Mackey, 401 U.S.] at 681, 91 S. Ct. at 1174, conflicts with the norm of principled decisionmaking." Johnson, 457 U.S. at 546, 102 S. Ct. at 2585.

18

direct appeal. <u>Griffith</u>, 479 U.S. at 322, 107 S. Ct. at 713.[3] The first reason is to ensure that the federal courts fulfill their constitutional function of adjudication rather than legislation. Because of the constitutional "case or controversy" requirement, the "nature of judicial review" is such that a federal court necessarily adjudicates a single case and decides the issue before the court; in so doing, the court may announce a new rule. See <u>id.</u> Preservation of the "integrity of judicial review" requires that the new rule be applied "to all similar cases pending on direct review." <u>Id.</u> at 322-23, 107 S. Ct. at 713. This is because the "'nature of judicial review'" is different from "the quintessentially 'legislat[ive]' prerogative to make rules of law retroactive or prospective as we see fit." <u>Harper</u>, 509 U.S. at 95, 113 S. Ct. at 2516 (quoting <u>Griffith</u>, 479 U.S. at 322, 107 S. Ct. at 712).[4]

The second reason for retroactively applying new rules to cases pending on

---

[3] Justice Harlan's opinions in <u>Desist</u>, <u>Mackey</u>, and, to a much lesser extent, <u>United States v. Estate of Donnelly</u>, 397 U.S. 286, 295, 90 S. Ct. 1033, 1039, 25 L. Ed. 2d (1970) (Harlan, J., concurring), form the backdrop for the entire discussion of retroactivity in recent years, whether in civil or criminal cases, on direct appeal or on habeas. <u>See, e.g.</u>, <u>Beam</u>, 501 U.S. 529, 111 S. Ct. 2439 (civil cases); <u>Griffith</u>, 479 U.S. 314, 107 S. Ct. 708 (criminal direct appeals); <u>Teague</u>, 489 U.S. 288, 109 S. Ct. 1060 (criminal collateral attacks).

[4] "As a practical matter, of course, [the Supreme Court] cannot hear each case pending on direct review and apply the new rule. But [the Court] fulfills [its] judicial responsibility by instructing the lower courts to apply the new rule retroactively to cases not yet final. Thus, it is the nature of judicial review that precludes us from '[s]imply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule.'" <u>Griffith</u>, 479 U.S. at 323, 107 S. Ct. at 713 (fourth alteration in original) (quoting <u>Mackey</u>, 401 U.S. at 679, 91 S. Ct. at 1173 (Harlan, J., concurring in the judgment)).

19

direct appeal is that "selective application of new rules violates the principle of treating similarly situated [parties] the same." Id. (alteration in original) (quoting Griffith, 479 U.S. at 323, 107 S. Ct. at 713). In the retroactivity context, the Court has measured whether defendants or parties are "similarly situated" solely by reference to the finality of the direct appeal. See, e.g., American Trucking Ass'ns, Inc. v. Smith, 496 U.S. 167, 214, 110 S. Ct. 2323, 2350, 110 L. Ed. 2d 148 (1990) (Stevens, J., dissenting) (contending that an intervening decision ought to apply retroactively to a civil litigant whose case was not yet final when the intervening decision was handed down, because "[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently" (emphasis added)); Harper, 509 U.S. at 97, 113 S.Ct. at 2517 (discussing "similarly situated" in terms of the finality of the case: "[W]e now prohibit the erection of selective temporal barriers to the application of federal law in noncriminal cases."); Johnson, 457 U.S. at 555-56, 102 S. Ct. at 2590-91 (discussing "similarly situated defendants" strictly in terms of the finality of conviction on direct appeal, and advocating an approach "that resolve[s] all nonfinal convictions under the same rule of law"). An appeal is considered "final" for retroactivity purposes when the availability of appeals has been exhausted and the time for a petition for certiorari has elapsed or a petition for

20

certiorari has been denied. <u>Griffith</u>, 479 U.S. at 321 n.6, 107 S. Ct. at 712 n.6;

<u>United States v. Estate of Donnelly</u>, 397 U.S. 286, 296, 90 S. Ct. 1033, 1039, 25 L.

Ed. 2d (1970) (Harlan, J., concurring) ("Just as in the criminal field the crucial

moment is . . . the time when a conviction has become final, . . . so in the civil area

that moment should be when the transaction is beyond challenge either because the

statute of limitations has run or the rights of the parties have been fixed by

litigation and have become <u>res judicata</u>.").

B.

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d

435 (2000), the Supreme Court announced a clear rule of constitutional law and

then applied that rule to the case before it by reversing the defendant's conviction.

The Court held that "[o]ther than the fact of a prior conviction, any fact that

increases the penalty for a crime beyond the prescribed statutory maximum must

be submitted to a jury, and proved beyond a reasonable doubt." <u>Id.</u> at 490, 120 S.

Ct. at 2362-63. This circuit, like our sister circuits, has held that <u>Apprendi</u> requires

that drug quantity must be charged in the indictment and proven to the jury beyond

a reasonable doubt for a defendant, sentenced pursuant to 21 U.S.C. § 841(b), to

receive a sentence above the prescribed statutory maximum. <u>See</u> <u>United States v.</u>

Rogers, 228 F.3d 1318, 1326-28 (11th Cir. 2000) (holding that Apprendi overruled United States v. Hester, 199 F.3d 1287 (11th Cir. 2000)).  In the instant case, the defendant, sentenced pursuant to section 841, asserts that his sentence exceeds the maximum statutory sentence, in violation of Apprendi.[5]  The defendant is thus seeking to receive the benefit, retroactively, of the Court's decision in Apprendi.  Indeed, the Supreme Court granted the defendant's petition for writ of certiorari, vacated this court's previous decision, and remanded the case for reconsideration in light of Apprendi.  See Ardley v. United States, 531 U.S. 1063,  121 S. Ct. 751, 148 L. Ed. 2d 654 (2001).

Instead of applying plain error review to the defendant's Apprendi claim, the panel's decision in this case declines to reach the merits of the claim at all.[6]  The panel bases its decision on our procedural rule "that issues and contentions not timely raised in the briefs are deemed abandoned."  United States v. Ardley, 242

---

[5] In this case, the defendant was indicted and convicted for violating 21 U.S.C. §§ 841(a) and 846, Count 1, and 18 U.S.C. § 1952, Counts 2 and 3.  His 293-month prison sentence on Count 1 is the subject of his Apprendi claim.

[6] Judge Carnes attempts to find an inconsistency in my position that this court should apply plain error analysis to an Apprendi argument raised for the first time on appeal but should refrain from applying the procedural bar of Fed. R. App. P. 28.  There is no inconsistency in this position because there is a distinct difference in the outcomes of applying the two procedural rules: enforcing Rule 28 "frustrates the purposes of the retroactivity doctrine" because the court is absolutely barred from applying the new constitutional rule; whereas, applying a plain error analysis, even though it is a more narrow review, allows the court, in at least some instances, to implement the new constitutional rule.

22

F.3d 989, 990 (11th Cir. 2001). While I fully support enforcing procedural requirements because of the valuable purposes they serve, see Presnell v. Kemp, 835 F.2d 1567, 1573-74 (11th Cir. 1988) (discussing the important purposes served by rules requiring that issues be raised in a proper and timely fashion on appeal),[7] I do not believe that our procedural requirement regarding abandonment should trump Supreme Court precedent that requires application of the intervening decision to this case on direct appeal.

The panel has essentially superimposed an additional requirement onto retroactivity determinations. While the Supreme Court has clearly stated that all cases pending on direct appeal at the time of an intervening decision are entitled to the benefit of a new rule, the panel's decision narrows the class of cases entitled to retroactivity. The panel's new rule is that cases are entitled to the benefit of an intervening decision only if: 1) the case was not yet final at the time of the intervening decision; and 2) the litigant presaged the intervening decision by raising the issue addressed by that decision in the litigant's initial brief on appeal. I believe that by adding this second requirement to retroactive application of intervening decisions, the panel's opinion runs counter to retroactivity as defined

_____

[7] I do not believe that the policy reasons in support of the "abandoned objection rule," which I enumerate in Presnell, are furthered by enforcement of the rule in this case.

23

by Supreme Court precedent.

Consider the effect of our new rule on the instant case. Starting with the assumption that the defendant has a meritorious claim that his sentence was imposed in violation of Apprendi, the panel's decision forecloses the defendant, sentenced in violation of the constitution, from obtaining relief – even though his conviction and sentence were not yet "final" when Apprendi was decided. I cannot agree that this an appropriate "retroactive" application of the intervening Supreme Court decision.

The Supreme Court's rationale for retroactive application of intervening decisions provides further illustration that the panel's decision runs afoul of retroactivity. As noted supra part I.A, the Supreme Court employs retroactivity to ensure the "integrity of judicial review," such that courts operate as a judiciary rather than a legislature, and to ensure that "similarly situated" litigants are treated the same. By failing to accord the defendant the benefit of Apprendi, the panel has rendered Apprendi prospective in application, at least in cases like Ardley. This certainly impugns the integrity of judicial review.[8] The panel's rule also negates

---

[8] The usual rationale for consistent enforcement of procedural requirements is judicial restraint, borne of the Constitution's "case or controversy" requirement. Unfortunately, the panel's decision, while utilizing a tool of judicial restraint, perversely promotes judicial activism by making Apprendi prospective in application in some cases. See Harper, 509 U.S. at 105-06, 113 S. Ct. at 2522 (Scalia, J., concurring) ("Prospective decisionmaking is the handmaid of judicial activism, and the born enemy of stare decisis.. . . .[T]he true traditional view is that

24

the principle of treating similarly situated litigants the same. As noted above, in the retroactivity context the Supreme Court has discussed whether litigants are "similarly situated" in terms of the timing of the case. That is, when the Supreme Court announces a new rule and applies it to a litigant in a specific case, another litigant is considered "similarly situated" if his case is still on direct appeal.[9] Implicit in the panel's decision is that litigants are not "similarly situated" for retroactivity purposes if one litigant has failed to make an argument on appeal in his case while another litigant has made such argument. Although this is sometimes a proper distinction,[10] my reading of the cases leads me to believe that it is a distinction without a difference when evaluating cases for retroactivity purposes.

I believe that the panel has wrongly added an additional hurdle to the

---

prospective decisionmaking is quite incompatible with the judicial power, and that courts have no authority to engage in the practice.") (Scalia, J., concurring).

[9] In addition to the citations supra part I.A, Teague, 489 U.S. 288, 109 S. Ct. 1060, provides further support for this notion. Teague distinguishes between cases on direct appeal and cases on habeas review for retroactivity purposes. The plurality in Teague held that defendants making collateral attacks on their convictions were not "similarly situated" with defendants on direct review. If a rule is applied to one case on collateral attack, however, it must be applied to all cases on collateral attack – for these defendants would be "similarly situated."

[10] For example, this distinction should determine the appropriate standard of review for a case on direct appeal. See, e.g., United States v. Candelario, 240 F.3d 1300 (11th Cir. 2001) (describing the difference between plain error review and preserved error review in Apprendi cases).

25

retroactive application of an intervening Supreme Court decision.[11]  This hurdle

has been neither contemplated nor condoned by the Court, and unnecessarily

narrows the class of litigants who will receive the benefit of an intervening

Supreme Court decision.[12]  Further, because we are the only circuit to impose this

additional hurdle, there is now a circuit split on this important issue.  See United

States v. Clinton, 256 F.3d 311, 313 (5th Cir. 2001) (on remand from the Supreme

Court) (reviewing a defendant's sentences for plain error where "the [Apprendi]

arguments presented herein were not presented to the district court or this Court on

initial appeal"); see also, e.g., United States v. Terry, 240 F.3d 65, 72-73 (1st Cir.

2001) (reviewing a defendant's Apprendi claims for plain error where the

defendant did not object "at sentencing" and failed to put the "arguments in the

initial briefs on appeal");[13] United States v. White, 238 F.3d 537, 541 (4th Cir.

---

[11] This hurdle applies to retroactivity in general, and not just to decisions of the Supreme Court.  For example, if the en banc court overrules precedent to change the law of this circuit, there is no reason for such a situation to be treated differently from a Supreme Court decision. In the same way, a panel decision that does not overrule precedent but sets forth a seminal principle for the first time would be subject to the same retroactivity rules.

[12] The claim that the Supreme Court intends decisions such as Apprendi to be applied retroactively to cases such as Ardley is bolstered by United States v. Johnson, 520 U.S. 461, 468, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718 (1997), which held that, for purposes of plain error review, an error is considered to be "plain" if it is plain at the time of appeal – not at the time of trial.

[13] The First Circuit's position is not well-defined, for that circuit declined to allow supplemental briefs on the Apprendi issue in United States v. Burgos, 239 F.3d 72, 77 n.3 (1st Cir. 2001).  The court denied the defendant's motion for supplemental briefing "without prejudice to the [defendant's] right to raise Apprendi by way of an application for collateral

26

2001) (reviewing an Apprendi claim for plain error where the defendant first raised the claim in a supplemental brief); United States v. Delgado, 256 F.3d 264 (5th Cir. 2001) (same); United States v. Mietus, 237 F.3d 866, 875 (7th Cir. 2001) (reviewing a defendant's Apprendi claims for plain error after the defendant "waived" the claims below by failing to object at trial; the defendant raised Apprendi-type claims for the first time in supplemental briefs five days before oral argument); United States v. Poulack, 236 F.3d 932, 935-37 (8th Cir. 2001) (reviewing an Apprendi claim for plain error where the defendant first raised the claim in a "supplemental brief"); United States v. Cernobyl, 255 F.3d 1215 (10th Cir. 2001) (same).

## C.

The panel's decision in this case will have far greater consequences than appear at first blush. While this case involves a single case on remand from the Supreme Court for reconsideration in light of Apprendi, the rule of Ardley extends to all other criminal and civil cases. Moreover, the rule of Ardley will be the rule of law in the lower courts in this circuit in addition to serving as binding precedent on this court.

Prior to Ardley, it had been my understanding that courts would apply an

---

relief in the event his direct appeal failed." Id.

27

intervening decision despite procedural rules to the contrary. See, e.g., United States v. Candelario, 240 F.3d 1300 (11th Cir. Feb. 5, 2001) (on rehearing) (applying plain error review to a defendant's Apprendi claim, even though the defendant had neither made a contemporaneous objection nor placed the issue in his initial brief on appeal; the first mention of an Apprendi-type issue was in the defendant's petition for rehearing en banc). My view was fully supported by case law. See, e.g., United States v. Calhoon, 97 F.3d 518, 529 (11th Cir. 1996) (applying United States v. Gaudin, 515 U.S. 506, 522-23, 115 S. Ct. 2310, 2320, 132 L. Ed. 2d 444 (1995) (holding that materiality is a jury question), retroactively, on a plain error basis, to a case on appeal where the defendant had neither objected at trial nor raise the issue in his initial brief on appeal);[14] United States v. Allen, 76 F.3d 1348, 1367 (5th Cir. 1996) (applying Gaudin retroactively, on a plain error basis, to a case on appeal where the defendants raised the issue "[f]or the first time

---

[14] In Calhoon, the defendant's initial brief did not mention Gaudin, even though Gaudin was decided about three weeks prior to the filing of the brief in Calhoon. The closest the defendant came to the Gaudin issue was his one page assertion that the trial court erred "as a matter of law" in determining that certain claims were material. The Government's brief first raised the Gaudin issue: "Although Appellant did not raise the issue, the government must address the impact of [Gaudin] on the case at bar." The defendant then made a full-fledged Gaudin argument in his reply brief. The panel opinion in Calhoon made no mention of the fact that the defendant had "abandoned" his argument by failing to raise it in his initial brief on appeal. In fact, the panel understood that Griffith required it to apply Gaudin retroactively, Calhoon, 97 F.3d at 529, and therefore reviewed for plain error the defendant's belated assertions that materiality should have been decided by the jury rather than the judge, id. at 529-30.

28

in their reply briefs").

After <u>Ardley</u>, I fear that intervening decisions that establish new precedent

will be given short shrift in this circuit in other cases that are not yet final. I am

unsure as to all of the consequences, but it seems certain that <u>Ardley</u> will apply in

civil cases as well as criminal cases, for there is no reason to distinguish between

the two based on the language of <u>Ardley</u>.[15] Further, it is perfectly logical to think

that a district court will see no need to grant a litigant the benefit of a new rule

announced by this court or the Supreme Court if there is any sort of procedural bar.

For example, in the criminal context, <u>Ardley</u> could lead to the continued

incarceration of a defendant who was unconstitutionally convicted. This is because

<u>Ardley</u> applies not just to sentence appeals, but also to appeals raising

constitutional infirmities in the conviction itself. Consider, for example, the new

rule we announced in <u>United States v. Santa</u>, 236 F.3d 662 (11th Cir. 2000). <u>Santa</u>

held, for the first time in this circuit, that some circumstances <u>require</u> an

anticipatory search warrant rather than a mere after-the-fact governmental claim of

---

[15] I suppose one could argue that the <u>Ardley</u> decision is somehow limited to <u>Apprendi</u> cases, since this circuit has only applied this variation on retroactivity in the <u>Apprendi</u> context. <u>See, e.g.</u>, <u>United States v. Garcia</u>, 251 F.3d 160 (11th Cir. 2001) (on remand from the Supreme Court) (unpublished table decision); <u>United States v. Padilla-Reyes</u>, 247 F.3d 1158, 1164 (11th Cir. 2001); <u>United States v. Nealy</u>, 232 F.3d 825, 830-31 (11th Cir. 2000). To the extent that these other cases support the <u>Ardley</u> principle, I believe they are wrongly decided. I further believe that, based on the broad language of <u>Ardley</u> and these other cases, the new principle of retroactivity will necessarily have broad application in this circuit.

29

"exigent circumstances." Id. at 673. Now imagine a hypothetical criminal case pending in this circuit when Santa was decided, in which a warrantless search conducted on the basis of exigent circumstances revealed the critical evidence pointing to the defendant's guilt. The case was not final when Santa was decided (because the defendant had not yet been convicted), but the time to contest the legality of the search had passed. The defendant, upon learning of the new rule, felt that the search conducted in his case was illegal pursuant to Santa, so he moved the district court to exclude the fruits of the search as illegally obtained. Although the defendant's claim fell squarely within Santa's precedent, the district court denied the motion, simply citing Ardley and noting that the time for the defendant's objection had passed, pursuant to Fed. R. Crim. Pro. 12(b)(3) (stating that a motion to suppress evidence "must be raised prior to trial").[16] The defendant, then, would have been convicted on the basis of unconstitutionally obtained evidence, even though his case was not yet final when Santa was decided.

In the same way, the rule of Ardley will have deleterious consequences in civil cases. Consider an example in which the en banc court or the Supreme Court held in Case A that a claim must be filed within two years rather than three years,

---

[16] This hypothetical would work equally well with any defense that a defendant can waive if not timely asserted.

thereby reversing settled precedent with regard to a statute of limitations.[17] With

this new statute of limitations in hand, the defendant in Case B – a case in which

the pleadings are closed – moves the district court to dismiss Case B because the

plaintiff's claim is barred by the now-applicable statute of limitations. In response,

the plaintiff cites Ardley for the proposition that the defendant is procedurally

barred from asserting as an affirmative defense the statute of limitations, pursuant

to Fed. R. Civ. Pro. 8(c) (stating that an affirmative defense based on the statute of

limitations "shall" be set forth in the answer). The district court thus denies the

defendant's motion, based on Ardley, and allows the case to progress to trial –

despite the fact there is no longer a legally cognizable claim at issue! The

plaintiff's recovery from the defendant would be affirmed on appeal because the

defendant "waived" his right to assert the affirmative defense of statute of

limitations. See EEOC v. White & Son Enter., 881 F.2d 1006, 1009 (11th Cir.

1989) (holding that a statute of limitations defense was waived when the defendant

did not raise it until three days before trial). Thus, Ardley's principle could have

the effect of creating liability in civil cases where precedent dictates no liability

---

[17] This might arise in a choice of law scenario when two states have differing statutes of limitations and a court must decide which is applicable.

should attach.[18]

In short, the consequences of Ardley are much greater than they may appear at first blush. These consequences demonstrate that the panel should not have applied a procedural bar as it did.

## II.

Aside from the retroactivity problems, the panel's decision is troubling for two additional reasons. First, the panel could have made an exception to the abandonment rule, for the abandonment rule is only a prudential constraint. Second, I believe the panel's decision frustrates the Supreme Court remand.

## A.

I believe the panel should have overlooked the defendant's failure to include an Apprendi-type argument in his initial brief on appeal. The requirement of placing all issues in the initial brief is found in Rule 28(a)(9)(A) of the Federal Rules of Appellate Procedure: The appellant's brief "must contain" the "appellant's contentions and the reasons for them, with citations to the authorities

---

[18] My example could apply to any claim that can be waived under the Federal Rules of Civil Procedure. The affirmative defenses of Fed. R. Civ. Pro. 8(c) provide ready examples of such "waivable" claims or defenses.

and parts of the record on which the appellant relies." Failure to comply with this requirement usually results in waiver or abandonment of the issue. See, e.g., Flanigan's Enters., Inc. v. Fulton Co., 242 F.3d 976, 987 n.16 (11th Cir. 2001). It is important to note, though, that this procedural requirement is not a jurisdictional constraint, but only a prudential constraint. See United States v. Miranda, 248 F.3d 434, 443-44 (5th Cir. 2001). It is well-established that courts have the power to raise issues sua sponte, despite procedural restraints. Fed. R. Crim. P. 52(b) ("Plain errors . . . may be noticed although they were not brought to the attention of the court."); Silber v. United States, 370 U.S. 717, 718, 82 S. Ct. 1287, 1288, 8 L. Ed. 2d 798 (1962) (per curiam) ("In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious.") (quoting United States v. Atkinson, 297 U.S. 157, 160, 56 S. Ct. 391, 392, 80 L. Ed. 555 (1936)). Courts exercise this power when prudence counsels that it is the appropriate course of action. See United States v. Diaz, 138 F.3d 1359, 1362 (11th Cir. 1998) (recognizing that a court of appeals may, sua sponte, raise and correct a plain error in sentencing, but declining to do so) (citing United States v. Adams,

634 F.2d 830, 836 (5th Cir. Unit A Jan. 19, 1981[19])); Meadows v. Cagle's, Inc., 954 F.2d 686, 693-94 (11th Cir. 1992) (reviewing, sua sponte, for plain error a district court's legal holding on an issue that was not appealed); United States v. Williams, 594 F.2d 86, 92 n.12 (5th Cir. 1979) (noting that the court is empowered to raise an issue sua sponte for plain error review, but declining to do so); United States v. Brown, 555 F.2d 407, 420 n.29 (5th Cir. 1977) (explaining that the court ordered supplemental briefing on an issue not properly raised by the parties because the court may notice plain error sua sponte); see also United States v. Jackson, 32 F.3d 1101, 1104-05 (7th Cir. 1994) (vacating a district court's sentencing error by using the appellate court's power, pursuant to Fed. R. Crim. P. 52(b), to address a plain error sua sponte); Hatley v. Lockhart, 990 F.2d 1070, 1073 (8th Cir. 1993) (addressing the merits of a defendant's contention – in part to preclude a later assertion that raising the issue in a habeas proceeding was an abuse of the writ – that his confession was obtained in violation of the Fifth Amendment, even though such issue was not enumerated in the brief).

In the instant case, prudence surely counsels that the panel should have reached the merits of the defendant's Apprendi claim, given that it is starkly

_____

[19] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

presented and that courts have uniformly pronounced sentences in excess of the

statutory maximum, meted out without a jury finding on drug quantity, to be

error.[20]  See, e.g., United States v. Strayhorn, 250 F.3d 462, 468 (6th Cir. 2001)

(collecting cases).  In this sense, I concur with the Fifth Circuit's reasoning in a

---

[20] An additional reason for reaching the merits of the defendant's Apprendi claim in this direct appeal is that the defendant surely will mount a collateral attack, pursuant to 28 U.S.C. § 2255, based on Apprendi.  His attack could be asserted in one of two ways.  First, he could present a substantive Apprendi claim, that is, the same claim he could have raised in his initial brief on direct appeal.  To do so, however, he would have to show "cause" for his failure to raise the claim and resulting "prejudice."  Engle v. Isaac, 456 U.S. 107, 129, 102 S. Ct. 1558, 1573, 71 L. Ed. 2d 783 (1982).  The novelty of a claim can serve as cause for counsel's failure seasonably to present it.  Engle, 456 U.S. at 133, 102 S. Ct. at 1574.  As Judge Carnes properly points out in his concurring opinion, however, the defendant is foreclosed from pursuing this argument by our recent panel decision in McCoy v. United States, 266 F.3d 1245 (11th Cir. 2001), which held that an Apprendi claim is not sufficiently novel to satisfy cause.  McCoy, however, would not foreclose the defendant's second ground for relief, a substantive ineffective assistance of counsel claim, that his attorney's omission of the Apprendi claim in his initial brief on direct appeal failed Sixth Amendment muster.  Failure to "raise a particular claim" may constitute ineffective assistance of counsel.  See Smith v. Robbins, 528 U.S. 259, 288, 120 S. Ct. 746, 765, 145 L. Ed. 2d 756 (2000).  Thus, armed with McCoy's conclusion that an Apprendi claim is not novel, the defendant could argue that a reasonably competent defense attorney would have made an Apprendi-type claim in his initial brief on appeal.  For example, the defendant could argue that a competent attorney, drawing on the Supreme Court's teaching in Jones v. United States, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999), would have asserted that the district court erred by failing to require the jury to find beyond a reasonable doubt the drug quantity, 1.5 kilograms of crack cocaine, which led to the defendant's 293-month sentence under 21 U.S.C. § 841(b)(1)(A).  This error, a competent attorney would have argued, required that the defendant's sentence for violating 21 U.S.C. § § 846 and 841(a)(1) be set aside and the case remanded for resentencing under 21 U.S.C. § 841(b)(1)(C).  A collateral attack based on this argument would burden the district court with the task of canvassing the record, and perhaps holding an evidentiary hearing, on the issue of counsel's competence under the circumstances.  See Gray v. Greer, 800 F.2d 644, 646-47 (7th Cir. 1986) ("When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial record to determine whether appellate counsel failed to present significant and obvious issues on appeal."), cited with approval in Smith, 528 U.S. at 288, 120 S. Ct. at 765.  In sum, the panel's decision to forego plain error review in this case, by relying on Rule 28, a decision the en banc court now upholds, will result in a waste of judicial resources.

35

recent case.

In this case, we find the following circumstances relevant to the exercise of our Rule 28 discretion. One, <u>Apprendi</u> was decided after briefing and one of the defendants refers us to the new decision in his post-argument brief. Thus, <u>it is not completely accurate to characterize the issue as waived or abandoned.</u> Two, Appellants protested at trial and on appeal that their due process rights had been infringed by the district court's procedure for determining drug quantity. We cannot in good faith ignore <u>Apprendi</u> in a discussion of what process is due a criminal defendant who challenges a drug quantity determination. Finally, it is clear from the record in this case that Appellants were sentenced in violation of constitutional due process as interpreted by the Supreme Court in <u>Apprendi</u>. Based on these factors, we will consider whether that violation was plain error as to each of the Appellants in this case. <u>See</u> <u>United States v. Garcia</u>, 242 F.3d 593 (5th Cir. 2001).

<u>Miranda</u>, 248 F.3d at 444 (emphasis added).

Thus, aside from my concerns about retroactivity, I believe that the <u>Ardley</u> panel should have exercised its discretion to overlook the defendant's failure to enumerate an <u>Apprendi</u>-type claim in his initial appellate brief.[21] The panel's failure to exercise its discretion forecloses all future panels from exercising their

---

[21] If one subscribes to Blackstonian jurisprudential views, one could validly assert that the panel should have noticed, <u>sua sponte</u>, plain error in the defendant's sentence in the initial appeal. This is because, according to this view of the law, courts do not create new law, but only announce what the law always has been. Thus, any error in the defendant's sentence existed when the case was here on the initial appeal, and the panel erred by failing to notice and address the error. (I note that multiple panels on which I served made the same error. <u>See, e.g.</u>, <u>United States v. Wims</u>, 207 F.3d 661 (11th Cir. 2000) (unpublished table disposition), <u>cert. granted, judgment vacated by</u> <u>Wims v. United States</u>, 531 U.S. 801, 121 S. Ct. 32, 148 L. Ed. 2d 3 (2000), <u>opinion on remand as</u> <u>United States v. Wims</u>, 245 F.3d 1269 (11th Cir. 2001); <u>United States v. Curry</u>, 211 F.3d 129 (11th Cir. 2000), <u>cert. granted, judgment vacated by</u> <u>Curry v. United States</u>, 531 U.S. 953, 121 S. Ct. 376, 148 L. Ed. 2d 290 (2000).)

discretion in <u>Apprendi</u> and non-<u>Apprendi</u> cases alike, because <u>Ardley</u> and its progeny have directly confronted and addressed the issue of the procedural bar. <u>Ardley</u>, 242 F.3d at 990 ("In the absence of any requirement to the contrary in either <u>Apprendi</u> or in the order remanding this case to us, we apply our well-established rule that issues and contentions not timely raised in the briefs are deemed abandoned."); <u>see also</u> <u>United States v. Padilla-Reyes</u>, 247 F.3d 1158, 1164 (11th Cir. 2001) ("[W]e apply the rule that parties cannot properly raise new issues at supplemental briefing, even if the issues arise based on intervening decisions or new developments cited in supplemental authority.").

B.

I also believe that the panel's decision frustrates the Supreme Court's remand. To be sure, the Supreme Court did not intimate its views on the merits of this case simply by remanding it to this court. <u>See</u> <u>In re Sealed Case</u>, 246 F.3d 696, 699 (D.C. Cir. 2001) (noting that while an order of the Supreme Court granting certiorari, vacating, and remanding "may indicate 'a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration,' it does 'not amount to a final determination on the merits'" (citations omitted)); <u>cf.</u> <u>United States v. Wims</u>,

37

245 F.3d 1269 (11th Cir. 2001) (holding, in a case on remand from the Supreme

Court for reconsideration in light of Apprendi, that error in the defendant's

sentences did not affect the defendant's substantial rights and therefore did not

require resentencing or reversal of the convictions).  The Supreme Court did vacate

the judgment of this court, however, meaning that the appeal must be looked at

afresh.  When looking at the appeal afresh, the panel should have taken the case

under submission with the pertinent information as it now stood, after the remand.

Instead, the panel took the case under submission with exactly the same

information that was available before the remand.  I do not see how this comports

with the Supreme Court's mandate.

The language of the Court's remand supports my understanding.  The

remand instructs this court to reconsider its previous opinion in light of Apprendi.[22]

Rather then emphasizing the remand itself, the panel emphasized the boilerplate

nature of the remand.  See Ardley, 242 F.3d at 990 (noting that "the Supreme

Court's remand order . . . is cast in the usual language," and that there is no

---

[22] The Supreme Court's opinion in this case stated, in full:
On petition for writ of certiorari to the United States Court of Appeals for the Eleventh
Circuit. Motion of petitioner for leave to proceed in forma pauperis and petition for writ
of certiorari granted. Judgment vacated, and case remanded to the United States Court of
Appeals for the Eleventh Circuit for further consideration in light of Apprendi v. New
Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).
Ardley v. United States, 531 U.S. 1063,  121 S. Ct. 751, 148 L. Ed. 2d 654 (2001).

requirement "that we treat the case as though the <u>Apprendi</u> issue had been timely raised in this Court"). I respectfully submit that this was error. Placing the emphasis on the remand itself yields the conclusion that the Supreme Court recognized that there was a plausibly meritorious enumeration of error in the defendant's sentence, yet the Court did not want to sift through the record to determine whether such error affected the defendant's substantial rights. The clear purpose of the remand was to afford this court the opportunity to apply the new substantive principle announced in <u>Apprendi</u>.[23] Of course, the actual application of <u>Apprendi</u> is something left to this court – and I suggest that application of plain error review could fairly and speedily dispose of the merits of the defendant's claim in the instant case. <u>See, e.g.,</u> <u>United States v. Gallego</u>, 247 F.3d 1191, 1201 (11th Cir. 2001); <u>United States v. Candelario</u>, 240 F.3d 1300, 1308-12 (11th Cir. 2001) (collecting cases); <u>Wims</u>, 245 F.3d at 1272-74.

---

[23] While the Supreme Court has issued dozens of identical remands to virtually every other circuit court of appeal, I have been unable to find any other circuit that has taken the approach of the <u>Ardley</u> panel regarding abandonment with respect to cases on remand from the Supreme Court for reconsideration in light of an intervening decision. To the contrary, the Fifth Circuit has explicitly reached the merits of a defendant's <u>Apprendi</u> claim in a case on remand from the Supreme Court, even though the defendant failed to raise an <u>Apprendi</u> claim in the trial court or in his initial brief to the appellate court. <u>United States v. Clinton</u>, 256 F.3d 311, 313 (5th Cir. 2001) (on remand from the Supreme Court) (reviewing a defendant's sentences for plain error where "the [<u>Apprendi</u>] arguments presented herein were not presented to the district court or this Court on initial appeal").

39

III.

For the foregoing reasons, I disagree with the panel's decision in <u>Ardley</u>.  I therefore dissent from the denial of rehearing en banc.

APPENDIX

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 98-7033
_____

D. C. Docket No. 97-00251-CR-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BARRY LEON ARDLEY,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Alabama
_____
**(February 20, 2001)**


ON REMAND FROM THE
SUPREME COURT OF THE UNITED STATES


Before CARNES, MARCUS and COX, Circuit Judges.

PER CURIAM:

We have previously affirmed the conviction and sentence in this case. See United States v. Ardley, No. 98-7033 (11th Cir. Nov. 18, 1999). The Supreme Court has vacated our prior judgment and remanded the case to us for further consideration in light of Apprendi v. New Jersey, 120 S.Ct. 2348 (2000). Having reconsidered our decision pursuant to the Supreme Court's instructions, we reinstate our judgment affirming the conviction and sentence.

Ardley did not raise the Apprendi issue when the case was before us prior to the certiorari petition being filed. He did not mention that issue in his initial brief, his reply brief, or in the suggestion for rehearing en banc that he filed. Nothing in the Apprendi opinion requires or suggests that we are obligated to consider an issue not raised in any of the briefs that appellant has filed with us. Nor is there anything in the Supreme Court's remand order, which is cast in the usual language, requiring that we treat the case as though the Apprendi issue had been timely raised in this Court. See United States v. Miller, 492 F.2d 37, 40 (5th Cir. 1974) (noting when Supreme Court vacates and remands case for reconsideration in light of one its opinions, that action does not imply any particular result because "had [a particular result] been the [Supreme] Court's desire, certiorari could have been granted and this case summarily reversed on the authority of [the opinion in light

of which this Court was to reconsider the case], rather than being remanded for further consideration").

In the absence of any requirement to the contrary in either Apprendi or in the order remanding this case to us, we apply our well-established rule that issues and contentions not timely raised in the briefs are deemed abandoned. Hartsfield v. Lemacks, 50 F.3d 950, 953 (11th Cir. 1995) ("We note that issues that clearly are not designated in the initial brief ordinarily are considered abandoned.") (quotation marks and citation omitted); Marek v. Singletary, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned."); Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989). We have recently applied this rule to Apprendi issues. See United States v. Nealy, 232 F.3d 825, 830 (11th Cir. 2000) ("Defendant abandoned the [Apprendi] indictment issue by not raising the issue in his initial brief.").

Our opinion affirming the conviction and sentence, United States v. Ardley, No. 98-7033 (11th Cir. Nov. 18, 1999), is REINSTATED.