[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 2, 2005
THOMAS K. KAHN
CLERK

No. 04-11155
Non-Argument Calendar
_____

D. C. Docket No. 03-20650-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELVIS FREDY CAMACHO-IBARQUEN,
a.k.a. Albert Carbonell,
a.k.a. Carlos Vega,
a.k.a. Daniel Canales,
a.k.a. Alberto Contrara,
a.k.a. Freddy Sanchez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 2, 2005)

**ON PETITION FOR REHEARING**

Before TJOFLAT, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

In his petition for rehearing Elvis Fredy Camacho-Ibarquen objects to footnote four in our opinion, United States v. Camacho-Ibarquen, 404 F.3d 1283, 1290 n.4 (11th Cir. 2005). That is where we said that because Camacho's argument was that there was Booker constitutional error and as a result he should be resentenced without the extra-verdict enhancement, we would not force upon him a remand on Booker statutory grounds which would involve resentencing with the enhancement and might lead to a higher sentence.

According to his rehearing petition, Camacho prefers a remand for resentencing on Booker statutory grounds to none at all. In light of that, we vacate our prior opinion in this appeal and substitute for it the following discussion, which is different only in that it deletes footnote four, inserts a new part IV, and adds a sentence to the newly re-numbered Part V.

Except in this regard, Camacho's petition for rehearing is DENIED.

Elvis Fredy Camacho-Ibarquen, a Columbian citizen, appeals from his seventy-seven-month sentence for attempting to re-enter the United States after a previous deportation, in violation of 8 U.S.C. §§ 1326(a), (b)(2). He contends that

2

the district court erred by imposing a sixteen-level enhancement pursuant to United States Sentencing Guidelines § 2L1.2(b)(1)(A)(ii) because he entered the United States after having been deported subsequent to a conviction for a crime of violence. Specifically, Camacho argues that § 2L1.2(b)(1)(A)(ii) applies only to offenses for which the conviction occurred within the previous ten years and that, because the previous crimes for which he was convicted occurred more than ten years ago, he should have received only an eight-level enhancement under U.S.S.G. § 2L1.2(b)(1)(C). Camacho also contends that his sentence is unconstitutional in light of Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004) and United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005). We hold that U.S.S.G. § 2L1.2(b)(1)(A)(ii) has no time limit with regard to the date of conviction and that Camacho's sentence does not violate the Sixth Amendment.

## I.

In July 2003, Camacho boarded the vessel M/V MENDIONDO in San Andres, Colombia as a stowaway in order to gain entry into the United States. Prior to the ship's arrival at the Port of Miami, agents from the Bureau of Customs and Border Protection boarded the ship and took Camacho into custody. Camacho, a citizen of Colombia, had been deported from the United States to

3

Columbia on three previous occasions—twice from Miami, Florida and once from New Orleans, Louisiana.

A federal grand jury issued a two-count indictment. Count one charged Camacho with being a stowaway on board a vessel in the jurisdiction of the United States, in violation of 18 U.S.C. § 2199. Count two charged Camacho with knowingly and unlawfully entering the United States after having been previously deported, in violation of 8 U.S.C. §§ 1326(a), (b)(2). In exchange for Camacho pleading guilty to count two, the government agreed to dismiss count one.

In the course of being sentenced, Camacho was assigned a base offense level of eight under U.S.S.G. § 2L1.2(a), but he received a sixteen-level enhancement based on two previous convictions that were considered "crimes of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). With a three-point reduction for acceptance of responsibility and a criminal history category of VI, the guidelines produced a sentencing range of seventy-seven to ninety-six months.

The first conviction that the district court found to be a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii) occurred in 1985, when Camacho was convicted in Florida for resisting an officer with violence, battery of a law enforcement officer, and carrying a concealed weapon. The other "crime of violence" occurred in 1988, when Camacho was convicted in Massachusetts for

4

carrying a firearm without a license, possession of a firearm without a firearm identification, and assault and battery by a dangerous weapon.

Camacho objected to the sixteen-level enhancement during the sentencing hearing. He argued that his convictions are not "crimes of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii) because a conviction over ten years old is not counted as a "crime of violence" and his convictions occurred over ten years prior to his current offense. The district court overruled Camacho's objection, finding that "the clear language of the Guidelines" required imposing § 2L1.2(b)(1)(A)(ii)'s sixteen-level enhancement. Camacho now appeals from the district court's ruling, renewing his argument that U.S.S.G. § 2L1.2(b)(1)(A)(ii) applies only to offenses for which the conviction occurred no more than ten years before the current offense.

## II.

"We review purely legal questions concerning use of the Sentencing Guidelines de novo." United States v. Murrell, 368 F.3d 1283, 1285 (11th Cir. 2004).

### A.

U.S.S.G. § 2L1.2 sets the base offense level for "Unlawfully Entering or Remaining in the United States" at eight.  U.S.S.G. § 2L1.2(a).  Section 2L1.2(b)(1) then directs the district court to:

Apply the Greatest:

If the defendant previously was deported, or unlawfully remained in the United States, after—

> (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by 16 levels;
>
> (B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels;
>
> (C) a conviction for an aggravated felony, increase by 8 levels;
>
> (D) a conviction for any other felony, increase by 4 levels; or
>
> (E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by 4 levels.

Neither the text of § 2L1.2 nor the application notes that follow state that "a conviction" must have occurred within a particular time period before the current offense for the relevant enhancement listed in § 2L1.2(b)(1)(A)–(E) to apply.  The application notes do explicitly state that two of the terms used in § 2L1.2(b)(1), "sentence imposed" and "aggravated felony," apply without regard to the date of

6

the underlying conviction.  See U.S.S.G. § 2L1.2, application nn.1(B)(vii), 3(A).

As with many other terms used in § 2L1.2, the definitions of those two terms are

imported from other provisions.

Application Note 1(B)(vii) to § 2L1.2 states that:  "'Sentence imposed' has

the meaning given the term 'sentence of imprisonment' in Application Note 2 and

subsection (b) of § 4A1.2 . . . , without regard to the date of the conviction."

Section 4A1.2 is located in the criminal history section of the sentencing

guidelines.

Similarly, Application Note 3(A) to § 2L1.2 states that "'aggravated felony'

has the meaning given that term in section 101(a)(43) of the Immigration and

Nationality Act (8 U.S.C. § 1101(a)(43)), without regard to the date of conviction

for the aggravated felony."

Camacho asks us to apply the principle of expressio unius est exclusio

alterius.  He contends that, because two terms in § 2L1.2 have explicit language

directing that they apply without regard to the date of the conviction, the

remainder of the operative terms have an implied restriction on the time period

from which convictions can be considered.[1]  He further contends that the method

---

[1] Camacho also argues that the 2003 amendment to § 2L1.2, which added language in an application note clarifying that the term "sentence imposed" is to be calculated without regard to the date of conviction, is a substantive change and, as a result, cannot be applied to him.  The

for calculating this implied age limit on convictions should be borrowed from the criminal history section of the sentencing guidelines. If we agreed, the only convictions that could be used to enhance under § 2L1.2(b)(1) would be those that occurred within ten years of committing the current offense and those that explicitly direct that they are applicable without regard to the date of conviction.

According to Camacho, § 2L1.2(b)(1)(A)(ii), which does not explicitly state that any conviction can be used regardless of the date, was improperly applied to him because the convictions on which the enhancement was based occurred more than ten years ago. He contends that his convictions qualify only as "aggravated felonies" under § 2L1.2(b)(1)(C), which directs an eight-level enhancement and has language in the application notes stating that aggravated felonies are considered without regard to the date of the conviction. Camacho concludes by arguing that, at the least, § 2L1.2 is ambiguous and the rule of lenity requires this

<hr>

sentencing guidelines commentary makes clear that the 2003 amendments to § 2L1.2 made no substantive changes. See U.S.S.G. amend. 658, app. C, vol. II at 401 (stating that the reason for the 2003 amendments was to "clarify[] the meaning of some of the terms used in § 2L1.2(b)(1)"). Because the 2003 amendments are not substantive, i.e. they do not lead to the imposition of harsher penalties, we apply § 2L1.2 as it existed when Camacho was sentenced on March 2, 2004. See 18 U.S.C. § 3553(a); United States v. Simmons, 368 F.3d 1335, 1338 (11th Cir. 2004). In any event, whether the application note clarifying the term "sentence imposed" made a substantive change has no impact on the determination of whether § 2L1.2(b)(1)(A)(ii) has a time period restriction.

8

Court to apply the less harsh eight-level enhancement for "aggravated felonies" under § 2L1.2(b)(1)(C).

With regard to the principle of statutory construction that the mention of one thing implies the exclusion of another, or expressio unius est exclusio alterius, its application has been described as "'an aid to construction, not a rule of law. It is not conclusive, is applicable only under certain conditions, is subject to exceptions, may not be used to create an ambiguity, and requires great caution in its application.'" United States v. Castro, 837 F.2d 441, 443 n.2 (11th Cir. 1988) (quoting 73 Am. Jur. 2d Statutes § 212, at 405–06). Furthermore, "[w]e will not read into the guidelines and their commentaries requirements that are not stated, or at least fairly implied, in them. And that is especially true where doing so would produce questionable results." United States v. Olshan, 371 F.3d 1296, 1300 (11th Cir. 2004).

The application of expressio unius in the way suggested by Camacho would produce "questionable results." The most obvious problem is that if the Sentencing Commission had intended § 2L1.2(b)(1)(A)–(E) to mean what Camacho argues, there is no reason the Commission would not have written an explicit time restriction into that guideline. The Commission obviously knew how to explicitly limit the application of certain convictions, as it did so with regard to

9

convictions that occurred when the defendant was a minor. See U.S.S.G. § 2L1.2, application n.1(A)(iv). Other guidelines sections, such as § 4A1.2(e) in the criminal history section, also include explicit time restrictions on the application of certain convictions. We are more inclined to find that, because other guidelines sections have explicit time restrictions on the application of convictions, the omission of such a restriction in § 2L1.2 means that none was intended for that section.

Another "questionable result" would follow from reading a time restriction into § 2L1.2. See Olshan, 371 F.3d at 1300. Section 2L1.2 gives no guidance as to what time-period limitation we should read into the otherwise unrestricted terms. We find it highly unlikely that the Sentencing Commission intended that § 2L1.2 should have a time period restriction of unspecified length. Camacho argues that the time period limitation provisions from the criminal history section of the guidelines should be imported into § 2L1.2. But there is no reason to choose these provisions over any others. See United States v. Adeleke, 968 F.2d 1159, 1161 (11th Cir. 1992); see also United States v. Gonzalez, 112 F.3d 1325 (7th Cir. 1997) (refusing to apply the criminal history section's 15-year limitation on foreign convictions to the aggravated felony enhancement under former § 2L1.2(b)(2)).

There is another reason to conclude that there is no time limitation that applies to all of the § 2L1.2 provisions without explicit language to the contrary. Recall that the definitions of "sentence imposed" and "aggravated felony," the two terms in § 2L1.2 with the "date of conviction" language, are imported from provisions outside of § 2L1.2. See U.S.S.G. § 2L1.2, application nn.1(B)(vii), 3(A). Each of those provisions has language limiting the time period in which certain kinds of convictions can apply. It is entirely possible, indeed likely, that the Sentencing Commission wanted to import into § 2L1.2 the substantive definitions from these other provisions, but not the time limitations they contain, and that is the reason it added the "without regard to the date of conviction" language in the application notes defining "sentence imposed" and "aggravated felony."

Application Note 1(B)(vii) of § 2L1.2 imports the definition of "sentence imposed" from U.S.S.G. § 4A1.2, which is part of the criminal history section of the guidelines. In addition to giving a substantive definition, § 4A1.2 limits the convictions that can be used in calculating a defendant's criminal history score. Under § 4A1.2, if the sentence imposed for a conviction was over one year and one month, then the conviction is counted if it occurred within fifteen years; all other convictions are counted if they occurred within ten years. U.S.S.G.

11

§ 4A1.2(e). In drafting § 2L1.2, the Sentencing Commission chose to import § 4A1.2's definition of "sentence imposed," but not to import § 4A1.2's time restriction on applicable convictions. It accomplished that with language explaining that the definition of "sentence imposed" is imported from the criminal history section but "without regard to the date of the conviction." U.S.S.G. § 2L1.2, application n.1(B)(vii). In other words, the Sentencing Commission imported that portion of the criminal history section's definition that it wanted to apply, which is the substantive definition, and it expressly ruled out that portion it did not want to apply, which is the time-period restriction. See United States v. Stultz, 356 F.3d 261, 268–69 (2d Cir. 2004) (rejecting the argument that because some definitions of terms in § 2L1.2's application notes do not have the "without regard to the date of conviction" language, "this omission means that the date of conviction is fair grounds for downward departure for any felonies listed in subsections (A) and (B)").

Similarly, § 2L1.2 imported the definition of "aggravated felony" from the Immigration and Nationality Act. U.S.S.G. § 2L1.2, application n.3(A). Under the INA's definition of "aggravated felony," the applicability of foreign convictions is limited to those where the term of imprisonment was completed within the previous fifteen years. See 8 U.S.C. § 1101(a)(43). Because it wanted

12

only the substantive definition of "aggravated felony" to apply to § 2L1.2, the

Sentencing Commission included express language stating that the conviction was

to be counted regardless of the date when it occurred.

No other definition of a term in § 2L1.2 that was imported from a different

statute had attached to it a provision that, if not explicitly addressed, might suggest

that only convictions occurring within a particular time-frame would be applied in

§ 2L1.2(b)(1).[2] As a result, there was no need to include language in any other

---

[2] Although there are two terms other than "sentence imposed" and "aggravated felony" in § 2L1.2's application notes that import terms from statutes that have within them an age limitation for applicable convictions, there was no need to include express language in the application notes to make it clear that the convictions they are referring to are applied in § 2L1.2(b)(1) without regard to the date of conviction.

Like the application note defining "aggravated felony," the application note defining "alien smuggling offense" imports the definition from INA § 101(a)(43). See U.S.S.G. § 2L1.2, application nn.1(B)(i), 3(A). However, unlike an "aggravated felony," an "alien smuggling offense," by definition, cannot be a violation of the law of a foreign country. See 8 U.S.C. § 1101(a)(43)(N); 8 U.S.C. § 1324(a). Because the time limitation in INA § 101(a)(43) only applies to convictions for violations of foreign law, there was no need to include express language disregarding INA § 101(a)(43)'s age limitation on foreign convictions in § 2L1.2's application note defining "alien smuggling offense."

Similarly, Application Note 4(B), like the application note defining "sentence imposed," imports the definition of a term from the guidelines' criminal history section. Application Note 4(B) of § 2L1.2 states that "'[t]hree or more convictions' means at least three convictions for offenses that are not considered 'related cases', as that term is defined in Application Note 3 of § 4A1.2." Application Note 3 of § 4A1.2 directs that offenses are not related if they are "separated by an intervening arrest." Because the determination of whether cases are related has nothing to do with whether there is a time restriction on particular convictions and the definition imported from the criminal history section into § 2L1.2 is limited to determining whether offenses are related cases, including an explicit reference dismissing the criminal history section's time bar for certain convictions would have served no purpose.

13

application note stating that a particular conviction was to be applied without regard to the date of conviction. See Stultz, 356 F.3d at 269 (finding that "the clause referring to dates of conviction was unnecessary with respect to drug trafficking crimes, and such omission is not an invitation to consider the period of time between offenses as grounds for departure").

The language in Application Notes 1(B)(vii) and 3(A) stating that the terms are applied without regard to the date of conviction was included not to distinguish them from the rest of § 2L1.2, but to distinguish them from the statutory context from where the terms came. The "without regard to the date of conviction" language in those two application notes was included to keep those two terms in accord with the rest of § 2L1.2; it was done to make clear that § 2L1.2 contains no restriction on the time period from which convictions are applied.

B.

Camacho also argues that the rule of lenity should be applied to reduce the sixteen-level enhancement he received under § 2L1.2(b)(1)(A)(ii) to an eight-level enhancement under § 2L1.2(b)(1)(C). We will apply the rule of lenity only if the provision being construed is still ambiguous after application of normal rules of construction. See United States v. Jeter, 329 F.3d 1229, 1230 (11th Cir. 2003);

14

see also Holloway v. United States, 526 U.S. 1, 12 n.14, 119 S. Ct. 966, 972 n.14 (1999) ("We have repeatedly stated that the rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended." (internal quotation and marks omitted)). Based on § 2L1.2's language, a comparison of the provisions at issue with the rest of § 2L1.2 and with the rest of the Guidelines, and the purpose of the provisions in § 2L1.2 that have express time limitations, it is clear that § 2L1.2 contains no general time restriction for applicable convictions. Therefore, we have no occasion to apply the rule of lenity. See United States v. Saunders, 318 F.3d 1257, 1264 (11th Cir. 2003) (noting that "the interpretation of the sentencing guidelines is governed by traditional rules of statutory interpretation").

## III.

Camacho next contends that his sentence is unconstitutional in light of the Supreme Court's decisions in Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004) and United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005). Camacho argues that his guilty plea encompassed only conduct that was sufficient for the district court to apply the eight-point enhancement for a previous "aggravated felony" pursuant to U.S.S.G. § 2L1.2(b)(1)(C). He asserts that by applying the sixteen-point enhancement under § 2L1.2(b)(1)(A)(ii), the district

15

court violated his Sixth Amendment rights by applying facts that were neither found by a jury beyond a reasonable doubt nor admitted by him in his plea.

Because Camacho failed to raise this issue before the district court, we review only under a plain error standard. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (internal citation and quotations omitted).

Camacho's sixteen-level enhancement was based solely on the fact that he had previous convictions. In Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998), the Supreme Court held that the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence. Id.; see also United States v. Marseille, 377 F.3d 1249, 1257 (11th Cir. 2004). "This conclusion was left undisturbed by Apprendi, Blakely, and Booker." United States v. Shelton, 400 F.3d 1325, 1329

16

(11th Cir. 2005).[3]  Therefore, the district court did not violate Camacho's Sixth Amendment rights by applying the § 2L1.2(b)(1)(A)(ii) enhancement based on his previous convictions.

## IV.

Although the district court did not commit a Sixth Amendment violation in sentencing Camacho, it did commit a statutory error under Booker.  As we stated in Shelton, the district court commits a statutory error by sentencing a defendant "under a mandatory Guidelines scheme, even in the absence of a Sixth Amendment enhancement violation."  400 F.3d at 1330–31.  By sentencing Camacho under a mandatory guidelines scheme, the district court committed a Booker statutory error.  See id.

As we stated before, because Camacho did not raise this argument before the district court, our review is only for plain error.  Rodriguez, 398 F.3d at  1298.  Because the district court treated the guidelines as mandatory, it committed an error that is plain.  Shelton, 400 F.3d at 1330–31.  Despite meeting the first two

---

[3] Although recent decisions, including Shepard v. United States, 544 U.S. ___, ___ S. Ct. ___ (2005), may arguably cast doubt on the future prospects of Almendarez-Torres's holding regarding prior convictions, the Supreme Court has not explicitly overruled Almendarez-Torres. As a result, we must follow Almendarez-Torres.  See Hohn v. United States, 524 U.S. 236, 252–53, 118 S. Ct. 1969, 1978 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality.").

17

prongs of the plain error test, Camacho has failed to fulfill his burden on the third prong.

Meeting the third prong of the plain error test "requires that an error have affected substantial rights, which almost always requires that the error must have affected the outcome of the district court proceedings." Rodriguez, 398 F.3d at 1299 (quotations and marks omitted). To determine whether an error has affected a defendant's substantial rights, "we ask whether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Id. at 1301.

Camacho's only argument in this regard is the blanket contention that the district court imposed the guideline sentence it did "solely" because of the mandatory nature of the guidelines. As we said in Shelton, "[t]o establish the third prong takes something more than showing the district court sentenced within the Guidelines range and felt bound to do so, especially given that the Guidelines range remains an important factor in sentencing." 400 F.3d at 133. Furthermore, a review of the sentencing transcript in this case indicates that, if anything, the district court was contemplating imposing a longer sentence rather than a shorter one.

As a result, Camacho has failed to carry his burden of demonstrating "a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Rodriguez, 398 F.3d at 1301.

**V.**

Because U.S.S.G. § 2L1.2(b)(1) covers convictions without regard to their date, the district court committed no error in finding that Camacho's previous convictions warranted the application of § 2L1.2(b)(1)(A)(ii)'s sixteen-level enhancement for "crimes of violence." Furthermore, the district court did not violate Camacho's Sixth Amendment rights under Booker by imposing a sixteen-level enhancement pursuant to § 2L1.2(b)(1)(A)(ii) based on his prior convictions. Finally, Camacho did not carry his burden of demonstrating that the district court's Booker statutory error affected his substantial rights.

**AFFIRMED.**