[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 14, 2005
THOMAS K. KAHN
CLERK

No. 04-14118
Non-Argument Calendar

_____

D.C. Docket No. 04-00003-CR-RH-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CULLEN LORENZO ROLLINS,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Florida

_____

(June 14, 2005)

Before ANDERSON, HULL and FAY, Circuit Judges.

PER CURIAM:

Cullen Lorenzo Rollins, Jr., appeals his 308-month sentence for conspiracy

to possess with intent to distribute cocaine base, in violation of 21 U.S.C.

§§ 841(a)(1), (b)(1)(C) and 846 ("Count 1"); possession of firearms in furtherance

of a drug-trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i),

(c)(1)(B)(i), and 2 ("Count 3"); and possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) ("Count 4"). Rollins argues on appeal that the court violated his Sixth Amendment right to a jury trial in considering the federal guidelines in sentencing him, in light of Blakely v. Washington, 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). For the reasons set forth more fully below, we affirm Rollins's sentence.

A federal grand jury returned a superseding indictment, charging Rollins with the above-referenced offenses and listing the firearms that Rollins allegedly possessed.[1] The government, in turn, filed an information, pursuant to 21 U.S.C. § 851, giving Rollins notice of the two prior felony offenses on which it intended to rely in seeking an enhanced statutory sentence under 21 U.S.C. § 841(b)(1)(C) (increasing statutory maximum to 30 years for prior felony drug offense). Rollins subsequently entered into a plea agreement, whereby he agreed to plead guilty to the above-referenced offenses in exchange for the government agreeing to dismiss the remaining count in his superseding indictment.

---

[1] Rollins's codefendant, Maurice Pernell McKinney, was charged in this same superseding indictment with Counts 1 and 3, as well as possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) ("Count 2"), and possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) ("Count 5").

As part of this plea agreement, Rollins conceded that the government could prove the following facts beyond a reasonable doubt:

On June 26, 2003, Leon County Sheriff's Office (LCSO) attempted an undercover operation with the intent to capture [Rollins], a known fugitive. An undercover call was placed to Rollins and a quantity of drugs was ordered. Delivery was to take place at a McDonald's restaurant on Lake Bradford Road. Sources indicated that Rollins always carried a firearm with him.

LCSO deputies who were conducting surveillance saw Rollins and another male at the McDonald's restaurant. They were seated in a 4-door Oldsmobile. Rollins exited the car and used a pay phone. Rollins then got back into the car. Rollins was in the front passenger seat. The other individual, later identified as [McKinney], was seated in the driver's seat.

Rather than completing the drug transaction, LCSO deputies decided to arrest Rollins on outstanding warrants. Rollins, who had gone back to the pay phone, was arrested without incident. Crack cocaine was found in his pants pockets. The crack found totaled approximately one (1) gram. Rollins intended to sell this crack cocaine.

LCSO deputies approached the car and ordered McKinney to get out. A ski mask, a loaded .38 caliber revolver, and a loaded Intratec 9mm semi-automatic assault weapon were found in the front seat of the car. Five (5) rounds of .38 ammunition was found in McKinney's pocket, and another 5 rounds were found in the glove box of the car.

Prior to being arrested, Rollins and McKinney had been selling crack cocaine in the vicinity of the Florida A & M University campus in Tallahassee, Florida. The crack cocaine found in Rollins'[s] pocket belonged to him. The Intratec 9mm semi-automatic assault weapon, loaded with approximately [22] rounds of ammunition, also belonged to Rollins. This 9mm ammunition was manufactured outside the

3

[S]tate of Florida. Thus, it had previously traveled in interstate commerce. Rollins possessed the Intratec 9mm semi-automatic assault weapon in order to further his drug[-]trafficking activities.

In addition to this factual proffer, Rollins conceded in the plea agreement that the government could prove that, prior to this incident, he had been convicted of seven enumerated felony offenses, including escape, attempted possession of cocaine with intent to distribute, two counts of aggravated battery, and battery on a law enforcement officer. The parties also agreed that they were reserving the right to appeal any sentence that the court imposed. After conducting a change-of-plea hearing, the court accepted this plea agreement and adjudicated Rollins guilty of the above-referenced offenses.

Rollins's presentence investigation report ("PSI") calculated his base offense level for Counts 1 and 4 as 24, pursuant to U.S.S.G. § 2K2.1(a)(1).[2] The probation officer recommended a two-level upward adjustment, pursuant to U.S.S.G. § 2K2.1(b)(4), because the semi-automatic handgun previously had been reported stolen by the owner, and a three-level downward adjustment, pursuant to

---

[2] The PSI reflects that Count 1 (U.S.S.G. § 3D1.2(c)) and Count 4 (U.S.S.G. § 2K2.1) were grouped together, pursuant to U.S.S.G. § 3D1.2. Because the use of § 2K2.1 resulted in the highest offense level, it was used as the offense level for the grouped offenses, pursuant to U.S.S.G. § 3D1.3(a). In addition, because Rollins had to serve a mandatory minimum statutory sentence of ten years' imprisonment for his § 924(c) offense in Count 3 of his superseding indictment, this statutory sentence was his guideline sentence for Count 3, pursuant to U.S.S.G. § 2K2.4(b), and Count 3 was exempted from the grouping, pursuant to U.S.S.G. § 3D1.1(b).

U.S.S.G. § 3E1.1, for acceptance of responsibility. Based on the officer's determination that Rollins was a career offender, however, he applied an enhanced offense level of 34, pursuant to U.S.S.G. § 4B1.1(B).[3]

After the probation officer adjusted this enhanced offense level downwards three levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, Rollins had a total offense level of 31 for Counts 1 and 4. With a criminal history category of VI, Rollins's resulting guideline range for Counts 1 and 4 was 188 to 235 months' imprisonment. As discussed above, however, Rollins also was subject to a consecutive mandatory minimum statutory sentence of ten year' imprisonment for his § 924(c)(1)(B)(ii) offense in Count 3.

Rollins only objected pretrial to the probation officer's statement in the PSI that Rollins "proffered" certain facts that were outlined in the offense conduct. The officer responded that (1) Rollins made both post-arrest and proffer statements, and (2) this information did not impact the guideline calculations.

---

[3] The probation officer explained in the PSI that she had determined that Rollins was a career offender because (1) he was at least 18 years old at the time the instant offense was committed; (2) the offense in Count 1 was a controlled-substance offense; and (3) he had at least two prior felony convictions of either a crime of violence or controlled-substance offense, including convictions for (i) escape on December 10, 1990, (ii) possession of cocaine base with intent to distribute on May 18, 1993; and (iii) aggravated battery, aggravated battery with a firearm, and assault of a law enforcement officer on April 7, 1992. The officer also explained that the enhanced offense level was 34, pursuant to U.S.S.G. § 4B1.1(B), because the statutory maximum penalty for Count 1 was 30 years' imprisonment.

At a joint sentencing hearing for Rollins and codefendant McKinney, Rollins conceded that his objection as to whether the offense conduct came from his own proffer was not relevant in calculating his guideline range because he admitted the same facts during his change-of-plea hearing. Rollins also generally raised a Blakely objection. After explaining in detail why it believed that the Supreme Court's decision in Blakely was applicable to the federal guidelines, the district court determined that the guidelines were unconstitutional, but that courts still should consider them in an advisory fashion in sentencing defendants.

The court specifically noted that its decision on Blakely could affect, at most, 8 potential months' imprisonment, because (1) the low end of Rollins's combined guideline range was 308 months' imprisonment, (2) Rollins's combined statutory mandatory minimum sentence was 300 months' imprisonment, and (3) Blakely did not affect mandatory minimum statutory sentences. The court explained that "this is [a] case where the policies adopted by the Congress, the career criminal provisions, the minimum mandatory provisions, this very circumstance one properly considers under [§] 3553, are not all inconsistent with the guidelines determination in the case." The court also discussed that, although it was sympathetic with Rollins's background, it believed that the substantial

sentence that corresponded with Rollins's guideline calculations was appropriate because Rollins had returned to his prior criminal activity.

Thus, after giving Rollins the opportunity to allocute, and after concluding that the PSI was accurate, the court sentenced Rollins to the low end of his guideline range, that is, 188 months' imprisonment on Counts 1 and 4, a consecutive term of 120 months' imprisonment on Count 3, a total of 6 years' supervised release, and a $100 assessment fee. After pronouncing this sentence, the court also clarified, on the government's questioning, that the court had considered the federal guidelines in an advisory capacity in sentencing Rollins.

In a brief he prepared prior to the Supreme Court's decision in Booker, Rollins argues that the district court committed a Blakely violation when it relied on facts that were not proven beyond a reasonable doubt in determining Rollins's guideline range for Counts 1 and 4. Rollins contends that, pursuant to the Supreme Court's holding in Blakely, the district court should not have determined, under the career offender provisions, that he had been convicted previously of three "violent felonies" or "serious drug offenses,"

Because Rollins timely raised a Blakely objection in the district court, we review his Blakely/Booker claim on appeal de novo, but reverse only for harmful error. See United States v. Paz, No. 04-14829, manuscript op. at 4 (11th Cir. April

7

5, 2005) (citation omitted). "To find harmless error, we must determine that the error did not affect the substantial rights of the parties." Paz, No. 04-14829, manuscript op. at 5 (quotation omitted). We further explained in Paz as follows:

> A constitutional error, such as a Booker error, must be disregarded as not affecting substantial rights, if the error is harmless beyond a reasonable doubt. This standard is only met where it is clear beyond a reasonable doubt that the error complained of did not contribute to the sentence obtained. The burden is on the government to show that the error did not affect the defendant's substantial rights.

Id. (internal quotations and marks omitted).

In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id., 530 U.S. at 490, 120 S.Ct. at 2362-63. Before Rollins's sentencing hearing, the Supreme Court revisited that rule in Blakely, in the context of Washington state's sentencing guideline scheme, and clarified that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. . . . In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose

without any additional findings." Blakely, 542 U.S. at \_\_\_, 124 S.Ct.at 2537 (emphasis in original). Applying these principles, the Court held that Blakely's sentence—which was enhanced under the state guidelines based on the sentencing court's additional finding by a preponderance of the evidence that Blakely committed his kidnaping offense with deliberate cruelty—violated the Sixth Amendment. Id. at \_\_\_, 124 S.Ct. at 2534-38. In a footnote, however, the Court explicitly remarked that "[t]he Federal Guidelines are not before us, and we express no opinion on them." Id. at \_\_\_ n.9, 124 S.Ct. at 2538 n.9.

While the instant case was pending on appeal, the Supreme Court issued its decision in Booker, finding "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue" in Blakely. Booker, 543 U.S. at \_\_\_, 125 S.Ct. at 749. Resolving the constitutional question left open in Blakely, the Supreme Court held that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. Id. at \_\_\_,125 S.Ct. at 749-51. In extending its holding in Blakely to the Guidelines, the Court explicitly reaffirmed its rationale in Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts

9

established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at ___, 125 S.Ct. at 756.

In a second and separate majority opinion, the Court in Booker concluded that, to best preserve Congress's intent in enacting the Sentencing Reform Act of 1984, the appropriate remedy was to "excise" two specific sections—18 U.S.C. § 3553(b)(1) (requiring a sentence within the guideline range, absent a departure) and 18 U.S.C. § 3742(e) (establishing standards of review on appeal, including de novo review of departures from the applicable guideline range)—thereby effectively rendering the Sentencing Guidelines advisory only. Id. at ___, 125 S.Ct. at 764. Thus, the guidelines range is now advisory; it no longer dictates the final sentencing result but instead is an important sentencing factor that the sentencing court is to consider, along with the factors contained in 18 U.S.C. § 3553(a).[4] Id. at ___, 125 S.Ct. at 764-65).

---

[4] These other relevant factors in § 3553(a) include: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for . . . (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .; (5) any pertinent policy statement []; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." See 18 U.S.C. § 3553(a)(1)-(7).

Following the Supreme Court's decision in <u>Booker</u>, we re-examined on remand in <u>United States v. Reese</u>, 397 F.3d 1337 (11th Cir. 2005),[5] a defendant's guideline sentence that had been enhanced, over objection, because the defendant possessed a firearm in connection with another felony.  <u>Id.</u> at 1337.  Concluding that the defendant's sentence was in violation of the Sixth Amendment, we vacated and remanded his case and ordered resentencing consistent with the Supreme Court's opinions in <u>Booker</u>.  <u>Id.</u> at 1338.

In <u>Paz</u>, we similarly examined a <u>Blakely</u>/<u>Booker</u> challenge to a six-level enhancement based on the district court's factual finding, which was not admitted by the defendant, that the amount of loss from the defendant's offense of conviction was between $30,000 and $70,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(D).  <u>Paz</u>, No. 04-14829, manuscript op. at 2.  We determined that, because the defendant's sentence was enhanced, under a mandatory guidelines system based on facts found by the judge, the defendant's Sixth Amendment right to a jury trial was violated.  <u>Id.</u> at 5.  Moreover, we determined that the government could not show that this error was harmless beyond a reasonable doubt because it was evident from the sentencing transcript that, had the court

---

[5]    Prior to the Supreme Court's issuance of its decision in <u>Booker</u>, we had determined that no error had occurred because <u>Blakely</u> did not apply to the federal guidelines.  <u>See</u> <u>United States v. Reese</u>, 382 F.3d 1308 (11th Cir. 2004), <u>judgment vacated by</u> <u>Reese v. United States</u>, ___ U.S. ___, 125 S.Ct. 1089, 160 L.Ed.2d 1058 (2005).

11

used the guidelines in an advisory fashion, Paz's sentence would have been shorter. Id. at 6.[6] We concluded, as such, that the constitutional error affected the defendant's substantial rights, and we remanded for resentencing consistent with Booker. Id.

In United States v. Shelton, 400 F.3d 1325 (11th Cir. 2005), we vacated and remanded a defendant's 190-month sentence, based on the defendant's argument that the district court plainly erred in sentencing him under the federal guidelines, in light of Blakely and Booker. Id. at 1326. We determined that no Sixth Amendment violation occurred because the judicially determined facts on which the court relied in calculating the defendant's guideline range were, among other things, prior convictions that need not be admitted by the defendant during his change-of-plea colloquy or proven beyond a reasonable doubt. Id. at 1329-30. Nevertheless, we determined that, because the district court considered and applied the federal guidelines as mandatory, plain error occurred under Booker. See id. at 1330-34.[7]

---

[6] During the defendant's sentencing hearing in Paz, the district court explicitly stated that, if the guidelines were found unconstitutional, if would have sentenced the defendant to a shorter term of imprisonment. See Paz, No. 04-14829, manuscript op. at 4.

[7] During the sentencing hearing in Shelton, the district court (1) expressed several times its view that the sentence required by the guidelines was too severe; (2) noted that the defendant's criminal history category was based on his past charges, instead of on the actual nature of the crimes as reflected in the sentences imposed in those cases; and (3) stated that its

In the instant case, in adopting the PSI, the court determined that Rollins was a career offender because (1) he was at least 18 years old at the time the instant offense was committed; (2) the offense in Count 1 was a controlled-substance offense; and (3) Rollins had at least two prior felony convictions that were either a crime of violence or a controlled-substance offense. This determination resulted in Rollins's offense level being enhanced from level 23 to level 34, pursuant to the career-offender provisions in § 4B1.1(B)

To the extent Rollins is challenging the court's factual findings as to prior convictions, no Sixth Amendment violation occurred. See Shelton, 400 F.3d at 1229-30; see also United States v. Camacho-Ibarquen, No. 04-11155, slip op. at 1757-58 (11th Cir. March 30, 2005) (court did not violate the defendant's Sixth Amendment rights by applying an enhancement based on his prior convictions); United States v. Orduno-Mireles, No. 04-12630, slip op. at 1792-93 (11th Cir. April 6, 2005) (Booker is not implicated when a defendant's sentence is enhanced based on a prior conviction). Nevertheless, even if we were to conclude that whether a prior criminal conviction is a crime of violence or a controlled-substance is a fact that must be decided beyond a reasonable doubt, instead of

---

sentence at the low end of the defendant's guideline range was "more than appropriate." See Shelton, 400 F.3d at 1328.

being a fact of a prior conviction, the district court here, unlike the courts in Reese, Paz, and Shelton, only treated the federal guidelines as advisory. (See R4 at 34-37, 46). No violation of the Sixth Amendment or Booker, therefore, occurred. See Booker, 543 U.S. at ___, 125 S.Ct. at 756.

Moreover, in adopting the PSI's facts, the court, at least implicitly, considered the PSI's description of the offense conduct and Rollins's history and characteristics. In imposing a sentence at the low end of Rollins's guideline range, the court explained that "this is [a] case where the policies adopted by the Congress, the career criminal provisions, the minimum mandatory provisions, this very circumstance one properly considers under [§] 3553, are not all inconsistent with the guidelines determination in the case." The court also discussed that, although it was sympathetic with Rollins's childhood, it believed that the substantial sentence that resulted from Rollins's guideline calculations was appropriate because Rollins had returned to his prior criminal activity. Thus, the court properly considered the nature and circumstances of the offense, Rollins's character, and the need to avoid unwarranted sentencing disparities between the codefendants. See 18 U.S.C. § 3553(a)(1)-(3), (6).

Accordingly, we conclude that the district court did not violate Rollins's Sixth Amendment right to a jury trial in sentencing him. We, therefore, affirm.

**AFFIRMED.**

14