HULL, Circuit Judge,
concurring in the denial of rehearing en banc, in which ANDERSON and CARNES, Circuit Judges, join:
In this case, Jerry Joseph Higdon, Jr. appealed his convictions and sentences for: (1) two counts of distribution of “ice” methamphetamine, and one count of possession with intent to distribute “ice” methamphetamine, all in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (2) a drive-by shooting, in violation of 18 U.S.C. § 36(b). The defendant’s lengthy sentence was, in large part, the product of receiving consecutive sentences for each of his drug and drive-by-shooting convictions. *1137 See U.S.S.G. § 5G1.2(d).[1]
At no time in the district court or in his initial brief on appeal did Higdon challenge the constitutionality of any extra-verdict sentencing enhancement or assert that the district court lacked the authority to impose the enhancements under a preponderance-of-the-evidence standard. Instead, approximately three months after briefing was completed in the case, Higdon filed a motion to file a supplemental brief raising a Blakely issue.
This Court has repeatedly followed the prudential rule that new issues not raised in opening briefs will not be considered by the court. See e.g., United States v. Sears, 411 F.3d 1240, 1241 (11th Cir.2005); United States v. Verbitskaya, 406 F.3d 1324, 1339-40 (11th Cir.2005); United States v. Day, 405 F.3d 1293, 1294 n. 1 (11th Cir. 2005); United States v. Dockery, 401 F.3d 1261 (11th Cir.2005); United States v. Ardley, 273 F.3d 991, 991-95 (11th Cir. 2001) (Carnes, J., concurring in the denial of rehearing en bane) (collecting cases); United States v. Nealy, 232 F.3d 825, 830 (11th Cir.2000).[2] Thus, this Court, consistent with this rule, denied Higdon’s motion and refused to consider his belated attempt to raise a Blakely issue in supplemental briefing.[3] Unhappy with this Court’s prior decisions, the dissent criticizes this Court’s application of its well-established prudential rule to cases involving United States v. Booker, — U.S. -, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).
As in Sears, Verbitskaya, Day, Dockery, Ardley, and others, this Court properly denied Higdon’s motion to file a supplemental brief raising a Blakely (now Booker) claim based on our circuit’s long-standing rule that issues not raised in a party’s initial brief will not be considered. This Court’s prudential rules apply evenly to all appellants, whether the government or the defendant. Moreover, the requirement that issues be raised in opening briefs “serves valuable purposes, as do all of the procedural default rules, which is why we regularly apply them. See generally Presnell v. Kemp, 835 F.2d 1567, 1573-74 (11th Cir.1988).” United States v. Ardley, 273 F.3d at 991 (Carnes, J., concurring in the denial of rehearing en banc).

*1138
Retroactivity Under Griffith v. Kentucky

The dissent’s main argument is that, under Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), this Court is required to allow all defendants to raise, for the first time, a Booker-type issue at any point in the direct appeal process, regardless of whether the issue was in the defendant’s initial brief on appeal. It is the dissent’s apparent belief that retroactivity rules always trump any prudential rule. I submit that nothing in Griffith, or any other Supreme Court decision, requires (or even suggests) this result.
In Griffith, the defendant timely raised the error in issue at trial and the appellate level, and in that context the United States Supreme Court concluded that “a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final ....” Griffith, 479 U.S. at 328, 107 S.Ct. at 716. “The Griffith holding, however, applies only to defendants who preserved their objections throughout the trial and appeals process.” Verbitskaya, 406 F.3d at 1340 n. 18 (citing Griffith, 479 U.S. at 316-20, 107 S.Ct. at 709-11).[4]
It is clear that Supreme Court precedent does not mandate that rules of ret-roactivity trump all procedural rules. Indeed, Supreme Court case law clearly indicates that rules of retroactivity are subject to procedural rules. For example, in' Shea v. Louisiana, 470 U.S. 51, 58 n. 4, 105 S.Ct. 1065, 1069 n. 4, 84 L.Ed.2d 38 (1985), the Supreme Court stated that “[a]s we hold, if a case was pending on direct review at the time Edwards [v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)] was decided, the appellate court must give retroactive effect to Edwards, subject, of course, to established principles of waiver, harmless error, and the like.”
Similarly, as discussed later, in Booker itself, the Supreme Court stated that although courts are to apply its holding to cases on direct review, “we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the ‘plain-error’ test.” Booker, 125 S.Ct. at 769. Booker clearly implied that “plain error” (which applies to issues not raised in the trial court) is only one of a number of prudential doctrines; the rule that issues not timely raised on appeal are waived or abandoned is certainly another.
Thus, there are two rules at issue in this case: (1) retroactivity; and (2) this Court’s prudential rule that issues not raised in the opening brief are waived. These rules, although equally important, play distinct and separate roles. As Judge Carnes explained in Ardley,
[r]etroactivity doctrine answers the question of which cases a new decision applies to, assuming that the issue involving that new decision has been timely raised and preserved. Procedural bar doctrine answers the question of whether an issue was timely raised and preserved, and if not, whether it should be decided anyway.
Ardley, 273 F.3d at 992 (Carnes, J., concurring in the denial of rehearing en banc).
*1139 The fact remains that our Court has elected to apply its prudential default rules in a uniform manner. It is the uniform application of this Court’s procedural default rules that provides a clear, intelligent rule for litigants to follow: raise the issue in your initial brief or risk procedural bar. The dissent is able to point to nothing, other than personal preference, that warrants a different application of this Court’s prudential rules.[5]

Orderly Administration of Justice

The dissent also asserts that the application of this Court’s prudential rules unnecessarily invites litigants to raise non-meritorious issues on the slim chance the Supreme Court might reverse course on some line of precedent while their direct appeal is pending. Of course, precisely the same argument can be made against every procedural bar. Adopting the dissent’s rationale would make all procedural bar rules unenforceable. In any event, the dissent’s catastrophic predictions regarding the orderly administration of justice have simply failed to materialize. It has been nearly four years since the Ardley decision was released, and we have not seen appellants raise a host of non-meritorious issues.[6]
Further, this Court’s prudential rules do not result in any manifest injustice. Criminal defense attorneys were well aware of Apprendi’s potential impact on the sentencing guidelines even after our Sanchez decision, and before the Supreme Court’s decisions in Blakely and Booker. In fact, in United States v. Reese, 382 F.3d 1308, 1309 (11th Cir.2004), United States v. Petrie, 302 F.3d 1280, 1289-90 (11th Cir. 2002), cert. denied, 538 U.S. 971, 123 S.Ct. 1775, 155 L.Ed.2d 530 (2003), United States v. Snyder, 291 F.3d 1291, 1294 n. 3 (11th Cir.2002), and United States v. Rod *1140 riguez, 279 F.3d 947, 950 n. 2 (11th Cir. 2002), defense counsel asserted before both the district court and this Court that their client’s rights to a jury trial were violated when the district court enhanced their sentences with extra-verdict enhancements not proved to a jury beyond a reasonable doubt. These Apprendi-type arguments about federal sentencing enhancements were made in those cases before Blakely and despite adverse precedent in Sanchez.

Procedural Default

The dissent also notes that Higdon has not “waived” the issue because he “could not have intentionally relinquished or abandoned a right that our own precedent flatly denied him at the time his initial brief was filed.” The dissent argues that a litigant should be able to raise a new issue based on an intervening Supreme Court decision at any time in the direct appeal process even if the defendant had not preserved the issue. However, the dissent’s position is not only flawed, but internally inconsistent. In effect, the dissent recognizes that procedural default of an issue should be enforced at the trial level and result in plain-error review on appeal, but that this Court is powerless to enforce its own prudential rules if an issue is not raised in the opening brief on appeal. As Judge Carnes stated in Ardley: “If the retroactivity doctrine requires that we address issues that have been procedurally defaulted on appeal, why does it not require that we address full bore those issues that have been procedurally defaulted at trial instead of limiting our review to plain error?” Ardley, 273 F.3d at 993 (Carnes, J., concurring in the denial of rehearing en banc). That is, “[t]he retro-activity doctrine either trumps the procedural default doctrine or it does not. Our position, which is consistent, is that it does not.” Id.

Other Developments

Other recent developments further illustrate the constitutionality and sensibility of this Court’s continued application of its prudential rules in a uniform and consistent manner.
As noted earlier, in Booker, the Supreme Court instructed courts to “apply today’s holdings — both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act — to all cases on direct review.” Booker, 125 S.Ct. at 769. However, the Supreme Court emphasized that the fact that Booker was to be applied to cases on direct review did not mean “that every sentence gives rise to a Sixth Amendment violation [or] that every appeal will lead to a new sentencing hearing.” Id. In fact, the Supreme Court directed courts to “apply ordinary prudential doctrines [including], for example, whether the issue was raised below .... ” Id. Therefore, the Booker Court has already rejected the very essence of the argument the dissent is making. If the position that retroactivity trumps ordinary prudential rules were correct, the Supreme Court would not have said in Booker itself that ordinary prudential rules were to be applied.
Lest there be any doubt about the constitutionality of this Court’s approach, the Supreme Court has applied its own prudential rules to foreclose the ability of defendants to raise Blakely claims. In Pasquantino v. United States, — U.S. - n. 14, 125 S.Ct. 1766, 1781 n. 14, 161 L.Ed.2d 619 (2005), issued after Booker, the petitioners argued “in a footnote that their sentences should be vacated in light of Blakely .... ” However, “Petitioners did not raise this claim before the Court of Appeals or in their petition for certiorari.” Pasquantino, 125 S.Ct. at 1781 n. 14. Al *1141 though the petitioners failed to previously raise the issue, “[t]his omission was no fault of the defendants, ... as the petition in this case was filed and granted well before the Court decided Blakely. Petitioners thus raised Blakely at the earliest possible point: in their merits briefing.” Pasquantino, 125 S.Ct. at 1783 n. 5 (Ginsburg, J., dissenting). Despite the fact that the petitioners raised their Blakely claim at the earliest possible moment after that decision was released, the Supreme Court applied its prudential rules and declined to address the issue. Pasquantino, 125 S.Ct. at 1781 n. 14.
If the Supreme Court’s prudential rules can be applied to foreclose a Blakely claim while a defendant is still in the direct appeal process, there is no reason why this Court’s prudential rules cannot be applied to foreclose a Booker claim.[7]

Circuit Conformity

The dissent makes a great deal out of the fact that, in its view, this Court is the only circuit to apply its prudential rules in such a way to Soo/cer-pipeline cases. First, as the dissent acknowledges, the Fifth Circuit has declined to consider certain, untimely Booker claims. In United States v. Lewis, 412 F.3d 614, 616 (5th Cir.2005); United States v. Taylor, 409 F.3d 675 (5th Cir.2005), and United States v. Hernandez-Gonzalez, 405 F.3d 260 (5th Cir.2005), the Fifth Circuit concluded that “absent extraordinary circumstances” it would not consider Blakely/Booker claims raised for the first time in a reply brief, petition for certiorari or in a petition for rehearing.
Second, some circuits simply discuss (and often reject) Blakely/Booker claims raised in supplemental briefing without addressing the appropriateness of reviewing *1142 tardy claims and, thus, cannot be said to have explicitly declined to apply the prudential rule that we apply.
Third, the mere fact that this Court has elected to apply its prudential rules in a uniform manner does not create any form of unconstitutional, or even unwarranted, sentence disparities between defendants. Although judges may disagree, not every disagreement between the circuits results in some form of unconstitutional or unwarranted sentences.
For all the above reasons, I concur in the Court’s denial of rehearing en banc.

. The district court sentenced Higdon to 480 months as to each of the three drug counts and 300 months on the drive-by shooting, with each term consecutive to each other.

. In Nealy, this Court explained this rule, as follows:
Parties must submit all issues on appeal in their initial briefs. When new authority arises after a brief is filed, this circuit permits parties to submit supplemental authority on "intervening decisions or new developments" regarding issues already properly raised in the initial briefs. Also, parties can seek permission of the court to file supplemental briefs on this new authority. But parties cannot properly raise new issues at supplemental briefing, even if the issues arise based on the intervening decisions or new developments cited in the supplemental authority.
Nealy, 232 F.3d at 830 (internal citations omitted).

.Although this Court does not consider Booker-type issues not raised in any way in a party's initial brief, we have liberally construed what it means to raise a Booker-type issue. See United States v. Dowling, 403 F.3d 1242, 1246 (11th Cir.2005) (evaluating whether a Blakely/Booker claim was made by reviewing whether a defendant: (1) referred to the Sixth Amendment; (2) referred to Appren-di or another related case; (3) asserted his right to have the jury decide the disputed fact; or (4) raised a challenge to the role of the judge as factfinder with respect to sentencing factors). This is consistent with how we have applied our prudential rule in other contexts and "liberally read briefs to ascertain the issues raised on appeal.” See United States v. Smith, 402 F.3d 1303, 1309-10 (11th Cir. 2005) (quoting United States v. Starke, 62 F.3d 1374, 1379 (11th Cir.1995)).

. Further, the Griffith Court did not require that a dissimilarly situated defendant — one who did not preserve his objection below or on appeal — would somehow benefit from a new constitutional rule. Rather, Griffith concluded that retroactive application of new rules on direct appeal was necessary in order to "treat[] similar situated defendants the same.” Griffith, 479 U.S. at 323, 107 S.Ct. at 713. Defendants who have not preserved a claim of error are not similarly situated to those who have.

. The dissent emphasizes that Rule 52(b) provides that plain error that affects substantial rights may be considered even though it was not brought to the court’s attention. See Fed. R.Crim.P. 52(b). The dissent argues that the Ardley/Levy rule thus has the effect of repealing Rule 52(b) because the Ardley/Levy rule allows for no exceptions. This is incorrect. For example, our Court has addressed claims of Booker error although they were not raised in the defendant’s opening brief where the government has conceded the error. See United States v. Dacus, 408 F.3d 686, 687 (11th Cir.2005) ("Although we ordinarily refuse to consider an argument not raised in an initial brief, we consider the argument that Dacus’s sentence was erroneous under Booker because both parties have joined the issue without objection.” (internal citation omitted)). Moreover, if a defendant timely raises a Sixth Amendment or Blakely issue in the opening brief, as many defendants did even prior to Booker, this Court has routinely applied plain error review under Rule 52(b). See e.g., United States v. Burge, 407 F.3d 1183 (11th Cir.2005); United States v. Martinez, 407 F.3d 1170 (11th Cir.2005); United States v. Orduno-Mireles, 405 F.3d 960 (11th Cir. 2005); United States v. Camacho-Ibarquen, 404 F.3d 1283 (11th Cir.2005); United States v. Shelton, 400 F.3d 1325 (11th Cir.2005).
The question is not whether an appellate court still has the power to consider issues not raised in the initial brief — of course it does. The question is whether this Court must consider Booker issues defaulted in the district court (triggering plain-error review if raised in the opening brief on appeal) and then defaulted again in the appellate court by not being timely raised there. This Court has determined that no manifest injustice results if it declines to consider untimely Booker claims on appeal.

. The long laundry list of objections predicted by the dissent in Ardley has not materialized in the trial courts because of the contemporaneous-objection rule. If defendants were going to raise a long list of objections, they would already be doing that so the issues could receive full de novo, and not just plain-error, review. See Maiz v. Virani, 253 F.3d 641, 676 (11th Cir.2001) (“Plain error review is an extremely stringent form of review.” (internal quotation marks and citation omitted)).

. The Supreme Court’s post-Booker remand orders do not affect application of our prudential rules. Since Booker, the Supreme Court has remanded over a hundred of our Circuit's cases with the same, or similar, form order: "The motion of petitioner for leave to proceed in forma pauperis and the petition for writ of certiorari is granted. The judgment is vacated and the case is remanded to the United States Court of Appeals for the Eleventh Circuit for further consideration in light of United States v. Booker, 543 U.S. -, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).” Some of those cases were ones in which this Court applied its prudential rules and refused to consider defendant’s belated efforts to raise Blakely/Booker claims. See, e.g., Levy v. United States, — U.S. -, 125 S.Ct. 2542, 162 L.Ed.2d 272 (2005); Sears v. United States, - U.S. -, 125 S.Ct. 1348, 161 L.Ed.2d 97 (2005); Dockery v. United States, - U.S. -, 125 S.Ct. 1101, 160 L.Ed.2d 1063 (2005). In Ardley, Judge Carnes explained why we do not read anything into these remands:
Whenever the Supreme Court decides an important issue of law, it routinely takes every case in which the court of appeals decision came out before the new decision was announced and in which the certiorari petitioner claims that new decision might apply, and treats all of those cases the same. The uniform treatment given all such cases is to vacate the court of appeals judgment and remand the case for further consideration in light of the new decision. Those boilerplate orders come out in bushel baskets full. There is no implication in the standard language of those orders that the court of appeals is to do anything except reconsider the case now that there is a new Supreme Court decision that may, or may not, affect the result. We have never felt constrained to read anything into such routine remands other than the direction that we take another look at the case because of the new decision.
Ardley, 273 F.3d at 994 (Carnes, J., concurring in the denial of rehearing en banc). These remands in no way direct how this Court is to apply Booker, nor do they preclude this Court’s application of its prudential rules. Sears, 411 F.3d at 1241; Dockery, 401 F.3d at 1262-63; Ardley, 273 F.3d at 995 (Carnes, J., concurring in the denial of rehearing en banc). We have now taken another look at the case and reaffirm the application of our prudential rule.