[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 18, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-14912
Non-Argument Calendar

_____

D.C. Docket No. 04-00023-CR-5-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEIDRIC COOK,
a.k.a. Kiki,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(July 18, 2005)**

Before ANDERSON, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Keidric Cook appeals his 151-month sentence for conspiracy to distribute and

to possess with intent to distribute 50 grams or more of cocaine base, and 500 grams or more of cocaine powder, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), (b)(1)(B)(ii), and 846. Cook argues on appeal that the district court committed reversible error in sentencing him under the then-mandatory United States Sentencing Guidelines ("federal guidelines"), and based on facts that neither were charged in his indictment, nor admitted by him, in light of Blakely v. Washington, 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). For the reasons set forth more fully below, we vacate and remand.

A federal grand jury returned a sealed indictment against Cook and three co-conspirators, Robert John Cook, Anthony Charles Hills, Jr., and Lavar Ramaro Hills, charging all of the co-conspirators with the above-referenced conspiracy and listing items for forfeiture. Other than referencing these statutory drug amounts, this indictment did not include either specific drug amounts, or that a firearm was possessed as part of the conspiracy.

Cook subsequently entered into a written plea agreement, whereby he agreed to plead guilty to this conspiracy charge, in exchange for the government agreeing not to file any related criminal charges against him, and to inform the court of his cooperation, if applicable. Cook also agreed that he (1) had a mandatory minimum

statutory sentence of ten years' imprisonment; (2) was responsible for the statutory drug amounts charged in his indictment; (3) was waiving his right to have a jury "make a determination, under a reasonable doubt standard, of that element of the crime charging the weight or amount of the controlled substances in the conspiracy . . . for which he [was] held accountable for sentencing purposes"; and (4) understood that the court would determine "the amount of the weight of the controlled substances attributable to him at sentencing under the preponderance of the evidence standard."

Furthermore, the parties stipulated as to the following facts: (1) Cook and his co-conspirators were involved in a conspiracy to possess with intent to distribute cocaine base and powder in the Panama City, Florida, area ; (2) as part of this conspiracy, confidential informants ("CIs") purchased cocaine powder from Cook on August 18 and 29, 2003; (3) on October 1, 2003, law enforcement officials seized from Cook's person and his residence approximately two-and-a-half ounces of cocaine powder, $700 in U.S. Currency, drug paraphernalia and items for cooking cocaine base, and firearms; (4) in January 2004, law enforcement officials seized from the residence occupied by co-conspirators Anthony and Lavar Hills electronic scales with cocaine residue, material used for cooking cocaine base, 96.6 grams of cocaine base, and approximately $2,400 in U.S. Currency; and (5) numerous CIs

could testify that they purchased cocaine powder from Cook and both cocaine powder and base from his co-conspirators during the time period of the conspiracy, with a total weight well in excess of 50 grams of cocaine base and 500 grams of cocaine powder.

During Cook's plea colloquy, he agreed that the government could show that he was responsible for 50 grams or more of cocaine base and 500 grams or more of cocaine powder. The district court also specifically informed Cook as follows:

> If you enter a guilty plea, the jury would not make that determination, and that determination would be left to the Court to make as to drug amount. And that determination would be made by me at your sentencing, but it will be based on a lesser standard of proof. It will not be based on a standard of beyond a reasonable doubt, such as the jury would be held to, but it would be based on a preponderance of the evidence standard.

Cook confirmed that he understood this waiver. Cook also agreed that the factual proffer contained in his plea agreement was correct, along with adding that his role in the conspiracy was (1) to distribute small amounts of cocaine powder, and (2) to purchase cocaine powder, put it into $20 and $40 bags, and distribute it in clubs and other areas. The court ultimately accepted Cook's plea, based on its determination that it was free and voluntary.

Prior to sentencing, a probation officer prepared a presentence investigation report ("PSI"), setting Cook's base offense level at 34, pursuant to U.S.S.G.

§ 2D1.1(c)(4), based on its determination that Cook was responsible for the equivalent of 21.16 kilograms of cocaine powder. The probation officer also recommended: (1) a two-level upward adjustment, pursuant to U.S.S.G. § 2D1.1(b)(1), because a dangerous weapon that Cook provided to a co-conspirator was possessed by the co-conspirator in the proximity of drugs relating to the conspiracy; and (2) a three-level downward adjustment, pursuant to U.S.S.G. § 3E1.1, for acceptance of responsibility. In calculating Cook's criminal-history points, the officer determined that, although Cook only had one criminal-history point based on a state conviction for driving under the influence ("DUI"), two additional criminal-history points were warranted, pursuant to U.S.S.G. § 4A1.1(d), because Cook was on probation for this DUI offense while the instant conspiracy occurred. With an adjusted offense level of 33, and a criminal history category of II, Cook's resulting guideline range was 151 to 181 months' imprisonment. Cook raised no objections to this PSI prior to sentencing.

At sentencing, however, Cook objected to the PSI's inclusion in calculating his criminal history category of two criminal-history points from his being on probation during the commission of the instant offense. Cook argued that, although he was arrested on the DUI offense on August 29, 2003, he was not sentenced and placed on probation for the DUI offense until October 8, 2003, after his arrest for the instant

5

offense. The court continued this sentencing hearing to allow the parties additional time to brief this issue.

Cook subsequently filed an additional objection to the PSI, arguing that, in light of the Supreme Court's decision in Blakely, the district court should sentence him only to his mandatory minimum statutory sentence, without regard to the federal guidelines. Cook specifically contended that his indictment did not specify a quantity of drugs beyond the statutory amounts of 50 grams of cocaine base and 500 grams of cocaine powder.[1]

On September 1, 2004, when sentencing recommenced, the court overruled Cook's objection to the calculation of his criminal history category, concluding that Cook had failed to show that he took some affirmative act or step to communicate to his co-conspirators his intent to withdraw from the conspiracy. Cook also renewed his Blakely objection, which the court overruled. In doing so, the court explained that it did not believe that the Supreme Court's decision in Blakely was applicable to the federal guidelines. The court, however, clarified that (1) this Blakely objection was preserved, and (2) if the Supreme Court reached a contrary conclusion in then-pending cases, such a determination "would definitely affect [Cook's] sentence."

---

[1] The record does not contain a written response by the government to Cook's Blakely objection, presumably because Cook did not file this objection until one day before sentencing was scheduled to recommence.

Cook then moved for a sentence at the low end of his guideline range, arguing that (1) he had cooperated with the government, albeit not enough for the government to file a motion for a downward departure; and (2) his guideline range was disproportionately high because part of the conspiracy offense occurred while he was on probation for the DUI offense. The government responded that, although Cook had attempted to cooperate, and was still cooperating, this cooperation had not been sufficient for a departure based on substantial assistance. Cook also personally stated that (1) he had three minor children, and (2) he did not have contact with his co-conspirators following his arrest for the instant offense.

The court informed the parties that, although it was "bound by" the federal guidelines, it did not have a problem in imposing a sentence within Cook's guideline range, based on evidence of the extent of his involvement in the conspiracy. The court also explained that "the federal conspiracy laws are harsh. They are tough, but they are intended to be," and that it was adopting the findings of the PSI. The court ultimately sentenced Cook to 151 months' imprisonment, 5 years' supervised release, and a $100 special assessment fee. In doing so, the court stated that it had (1) considered the factors set out in 18 U.S.C. § 3553(a), including the applicable federal guidelines; (2) found that this sentence met the general goals of punishment; and (3) imposed a sentence at the low end of Cook's guideline range because he had

7

attempted to cooperate with the government.

Cook specifically argues on appeal that <u>Blakely</u>/<u>Booker</u> error occurred in his case because the district court (1) sentenced him under the then-mandatory federal guidelines; and (2) relied on facts and criminal conduct that neither were charged in Cook's indictment, nor admitted by him during his plea colloquy. Cook also contends that resentencing is warranted because, at resentencing, the court could (1) consider the full extent of his cooperation, despite that the government had not filed a motion for a downward departure; and (2) redetermine his criminal history category.

As a preliminary matter, although neither party has addressed the issue of waiver, Cook arguably is foreclosed from arguing error based on <u>Booker</u> when he agreed as part of his plea agreement to waive his right to have a jury determine drug amount beyond a reasonable doubt. We review the validity of an appeal waiver <u>de novo</u>. <u>United States v. Weaver</u>, 275 F.3d 1320, 1333 n.21 (11th Cir. 2001). A sentence-appeal waiver is valid and enforceable if made knowingly and voluntarily. <u>Id.</u> at 1333 (citing <u>United States v. Bushert</u>, 997 F.2d 1343, 1350-51 (11th Cir. 1993)). A waiver will be enforced if the government demonstrates either: "(1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the

8

full significance of the waiver." United States v. Cesal, 391 F.3d 1172, 1182 (11th Cir. 2004) (quoting United States v. Benitez-Zapata, 131 F.3d 1444, 1446 (11th Cir. 1997)), petition for cert. filed, No. 04-9865 (U.S. April 21, 2005).

Furthermore, we have concluded that "[t]he right to appeal a sentence based on Apprendi/Booker grounds can be waived in a plea agreement." United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir. 2005) (rejecting argument that defendant's Booker challenge fell within an exception to the appeal waiver that allowed her to challenge any sentence that exceeded the statutory maximum). Following Rubbo, we also rejected a defendant's argument that his Booker challenge that the district court applied the guidelines in an unconstitutional manner fell within an exception to his appeal waiver, that is, that the defendant could appeal a "violation of the law apart from the guidelines." United States v. Grinard-Henry, 399 F.3d 1294, 1297 (11th Cir.), cert. denied, No. 04-9566 (U.S. May 16, 2005); see also United States v. Frye, 402 F.3d 1123, 1129 (11th Cir. 2005) (concluding that defendant's appeal of his sentence was barred by his knowing and voluntary appeal waiver, as contained in his plea agreement).

In the instant case, unlike the facts in Rubbo, Grinard-Henry, and Frye, Cook did not agree to waive all arguments relating to the application of the sentencing guidelines. Nevertheless, Cook acknowledged in his plea agreement that he was

9

waiving his right to a jury determination of drug amount beyond a reasonable doubt. Indeed, Cook expressly agreed in his plea agreement that the court would determine the "amount of the weight of the controlled substances attributable to him at sentencing under the preponderance of the evidence standard." Cook also conceded during his plea colloquy that he understood that, if he entered a guilty plea, the court would decide drug amount, and that this determination would be based on a preponderance of the evidence standard, instead of beyond a reasonable doubt. Moreover, Cook has not argued on appeal that this waiver was not knowing and voluntary. Thus, to the extent Cook's Sixth Amendment challenge is based on the court's determination of drug amount, no error occurred.[2]

Cook, however, also is challenging his sentence based on the district court's use of the then-mandatory federal guidelines, and based on its reliance on other judicially determined facts in calculating Cook's sentence. Because Cook timely raised a Blakely objection in the district court, we review his Blakely/Booker claim on appeal de novo, but reverse only for harmful error, see United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005) (citation omitted). "To find harmless error, we must

---

[2] The Supreme Court also has instructed that "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." See Blakely, 542 U.S. at ___, 124 S.Ct. at 2541.

determine that the error did not affect the substantial rights of the parties." Paz, 405 F.3d at 948 (quotation omitted). Moreover, under harmless-error review, the government carries the burden of proof. Id.

In Apprendi v. New Jersey, 530 U.S. 224, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id., 530 U.S. at 490, 120 S.Ct. at 2362-63. Before Cook's sentencing hearing, the Supreme Court revisited that rule in Blakely, in the context of Washington state's sentencing guideline scheme, and clarified that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. . . . In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely, 542 U.S. at ___, 124 S.Ct. at 2537 (emphasis in original).

Applying these principles, the Supreme Court held that Blakely's sentence—which was enhanced under the state guidelines based on the sentencing court's additional finding by a preponderance of the evidence that Blakely committed his kidnaping offense with deliberate cruelty—violated the Sixth Amendment. Id.

11

at \_\_\_, 124 S.Ct. at 2534-38.  In a footnote, however, the Court explicitly remarked that "[t]he Federal Guidelines are not before us, and we express no opinion on them."  Id. at \_\_\_ n.9, 124 S.Ct. at 2538 n.9.

While the instant case was pending on appeal, the Supreme Court issued its decision in Booker, finding "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue" in Blakely.  Booker, 543 U.S. at \_\_\_, 125 S.Ct. at 749.  Resolving the constitutional question left open in Blakely, the Supreme Court held that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial.  Id. at \_\_\_,125 S.Ct. at 749-51.  In extending its holding in Blakely to the Guidelines, the Court explicitly reaffirmed its rationale in Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  Id. at \_\_\_, 125 S.Ct. at 756.

In a second and separate majority opinion, the Court in Booker concluded that, to best preserve Congress's intent in enacting the Sentencing Reform Act of 1984, the appropriate remedy was to "excise" two specific sections—18 U.S.C. § 3553(b)(1) (requiring a sentence within the guideline range, absent a departure) and 18 U.S.C.

12

§ 3742(e) (establishing standards of review on appeal, including de novo review of departures from the applicable guideline range)—thereby effectively rendering the Sentencing Guidelines advisory only. Id. at ___, 125 S.Ct. at 764. Thus, the guidelines range is now advisory; it no longer dictates the final sentencing result but instead is an important sentencing factor that the sentencing court is to consider, along with the factors contained in 18 U.S.C. § 3553(a).[3] Id. at ___, 125 S.Ct. at 764-65.

Following the Supreme Court's decision in Booker, we examined in Paz a Blakely/Booker challenge to a guideline enhancement based on the district court's factual finding on an amount of loss. Paz, 405 F.3d at 947. We determined that the defendant's sentence was erroneous because (1) it was based on judicially determined facts that were not admitted by the defendant, and (2) it was enhanced under a mandatory guidelines system. Id. at 948. Moreover, we concluded that the

---

[3] These other relevant factors in § 3553(a) include: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for . . . (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .; (5) any pertinent policy statement []; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." See 18 U.S.C. § 3553(a)(1)-(7).

government could not show that these errors were harmless because the sentencing transcript clearly showed that, had the district court treated the federal guidelines as advisory, the defendant's term of imprisonment would have been shorter. Id. at 948-49. We, therefore, vacated and remanded Paz's sentence for resentencing consistent with Booker. Id. at 949.

Here, the court applied a two-level enhancement, pursuant to § 2D1.1(b)(1), because a dangerous weapon that Cook provided to a co-conspirator was possessed in the proximity of drugs relating to the conspiracy. Nevertheless, Cook admitted the facts underlying this enhancement at sentencing by not disputing his PSI's inclusion of them. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005) (concluding that sentence enhancement based on drug quantity did not violate Booker where the defendant did not dispute the facts in the PSI); United States v. Burge, No. 04-13468, slip op. at 2088-89 (11th Cir. May 2, 2005) (rejecting Booker challenge under plain-error review because the defendant admitted facts relating to his relevant conduct by abandoning at sentencing his objections to various factual statements in the PSI). Thus, this § 2D1.1 enhancement did not result in a Sixth Amendment violation under Booker.

To the extent Cook also is challenging the court's calculation of his criminal-history points, this argument similarly fails. The Supreme Court held in Almendarez-

14

Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), that the government need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those prior convictions for purposes of enhancement. Id., 523 U.S. at 247, 118 S.Ct. at 1233; see also United States v. Marseille, 377 F.3d 1249, 1257 (11th Cir.) (discussing the Almendarez-Torres holding), cert. denied, 125 S.Ct. 637 (2004). Moreover, we have determined that the Supreme Court's decision in Almendarez-Torres was "left undisturbed by Apprendi, Blakely, and Booker," such that "a district court does not err by relying on prior convictions to enhance a defendant's sentence." See Shelton, 400 F.3d at 1329; see also Orduno-Mireles, 405 F.3d 960, 962 (11th Cir. 2005) (Booker is not implicated when a defendant's sentence is enhanced based on a prior conviction); United States v. Camacho-Ibarquen, 404 F.3d 1283, 1290 n.3 (11th Cir. 2005) (same); United States v. Gallegos-Aguero, No. 04-14242, manuscript op. at 3-4 (11th Cir. May 18, 2005) (same). Thus, Cook has not shown that the court violated his Sixth Amendment rights in light of Booker. See Booker, 543 U.S. at ___, 125 S.Ct. at 756.

On the other hand, as Cook asserts, when the court sentenced him, the court was operating under a belief that the federal guidelines were mandatory, instead of advisory. A non-constitutional Booker error, therefore, occurred. See Shelton, 400 F.3d at 1330-31 (concluding that a statutory error occurs when the district court

15

sentences a defendant "under a mandatory [g]uidelines scheme, even in the absence of a Sixth Amendment enhancement violation").

We have determined that there are two harmless error standards for <u>Booker</u> errors, dependent on whether the error is constitutional or statutory. <u>See</u> <u>United States v. Mathenia</u>, No. 04-15250, manuscript op. at 5 (11th Cir. May 23, 2005). We explained in <u>Paz</u>—an appeal involving a constitutional <u>Booker</u> error—that, when a constitutional <u>Booker</u> error occurs, the government only may establish that it was harmless by showing, under a heightened standard, that "it is clear beyond a reasonable doubt that the error complained of did not contribute to the sentence obtained." <u>Paz</u>, 405 F.3d at 948 (internal quotation and marks omitted). On the other hand, in <u>Mathenia</u>, we determined that

> non-constitutional error is harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the sentence, or had but very slight effect. If one can say with fair assurance that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error.

<u>Mathenia</u>, No. 04-15250, manuscript op. at 5-6 (internal quotations and marks omitted).[4]

---

[4] Phrasing this test conversely, we also have explained that non-constitutional error is harmless unless it "resulted in actual prejudice because it had substantial and injurious effect or influence in determining the [result]." <u>See</u> <u>Gallegos-Aguero</u>, No. 04-14242, manuscript op. at 4 (quoting <u>United States v. Guzman</u>, 167 F.3d 1350, 1353 (11th Cir. 1999)); <u>see</u> <u>also</u> <u>United States v. Petho</u>, No. 04-15412, manuscript op. at 3 (11th Cir. May 18, 2005) (same).

We further explained in <u>Mathenia</u> that "[t]he non-constitutional harmless error standard is not easy for the government to meet. It is as difficult for the government to meet that standard as it is for a defendant to meet the third-prong prejudice standard for plain error review." <u>Id.</u> at 6. Nevertheless, we concluded that the government had met this burden by citing to a statement by the district court that, if the Supreme Court determined that the federal guidelines were unconstitutional as mandatorily applied, the district court "nonetheless [would] consider the guidelines as—for their persuasive value or as advisory, and the sentence [the court] would impose would be the same." <u>Id.</u> at 7. We, therefore, concluded in <u>Mathenia</u> that the government "demonstrated with fair assurance that the district court's error of applying the guidelines in a mandatory fashion did not affect, or had but a slight affect, on [the defendant's] ultimate sentence." <u>Id.</u> at 8.[5]

Because this case involves only a non-constitutional <u>Booker</u> error, we must apply the test discussed in <u>Mathenia</u>, instead of the "beyond a reasonable doubt" test discussed in <u>Paz</u>. The court in the instant case informed the parties that it "did not have a problem in imposing a sentence within Cook's guideline range, based on

_____

[5] In reaching this conclusion in <u>Mathenia</u>, we cited to our decision in <u>United States v. Robles</u>, No. 04-13598, manuscript op at 8-10 (11th Cir. May 10, 2005), in which we concluded—under the more stringent harmless error test for constitutional <u>Booker</u> error—that the error was harmless where the court unequivocally stated that its sentence would be the same even if the federal guidelines only were advisory. <u>See Mathenia</u>, No. 04-15250, manuscript op. at 7-8.

17

evidence of the extent of his involvement in the conspiracy." It noted, as well, that (1) the federal conspiracy laws are intended to be harsh, (2) the court had considered the factors set out in § 3553(a), and (3) it had determined that Cook's sentence met the general goals of punishment.

However, unlike the facts in Mathenia, the court here also noted that it was "bound by" the guidelines, and that it believed that a contrary ruling by the Supreme Court in Booker "would definitely affect [Cook's] sentence." Moreover, the court stated that it was imposing a sentence at the low end of the guidelines because Cook had attempted to cooperate with the government. Because these statements do not show "with fair assurance that the sentence was not substantially swayed by the error," the government has not shown that Cook's substantial rights were not violated, and, thus, it has not proven that the Booker error was harmless. See Mathenia, No. 04-15250, manuscript op. at 5-6; see also United States v. Davis, No. 04-14585, manuscript op. at 5-6 (11th Cir. May 4, 2005) (concluding that, despite the court's grant of a motion for a downward departure for substantial assistance, the government could not show that the court's mandatory application of the guidelines in sentencing the defendant was harmless, because the motion only gave the court limited discretion in considering the defendant's assistance).

Accordingly, we conclude that, because Cook freely and voluntarily waived his

18

right to a jury determination of drug amount, the district court's determination of this amount by the preponderance of the evidence was not erroneous. In addition, the court did not violate Cook's Sixth Amendment rights in sentencing him by relying on his prior convictions and on facts to which he admitted. The court, however, committed a non-constitutional error in treating the federal guidelines as mandatory. Furthermore, the government has failed to show that this preserved error was harmless. [6] We, therefore, vacate and remand for resentencing consistent with the Supreme Court's decision in Booker.

**VACATED AND REMANDED.**

---

[6]In fact, the government has conceded such and agreed that this case should be remanded for resentencing. We are grateful for the candor of government counsel.